# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER BAINBRIDGE, <u>ET</u> <u>AL.</u>, | : | CIVIL ACTION NO. 3:16-CV-0411 |
| Plaintiffs | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| OCWEN LOAN SERVICING, LLC, <u>ET</u> <u>AL.</u>, | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Plaintiffs, Christopher and Kelly Bainbridge, filed an amended complaint against Defendants U.S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Back Certificates, Series 2007-CB6 ("U.S. Bank"); Udren Law Offices, P.C. ("Udren"); and Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants").  (Doc. 14).  Plaintiffs allege that Ocwen and Udren violated the Fair Debt Collection Practices Act,15 U.S.C. § 1692, <u>et</u> <u>seq.</u> ("FDCPA").  (<u>Id.</u> at pp. 5-6).  Plaintiffs also claim that Defendants made wrongful use of civil proceedings in violation of 42 Pa. C.S.A. § 8351, <u>et</u> <u>seq.</u> ("Dragonetti Act"), and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, <u>et</u> <u>seq.</u> ("UTPCPL").  (<u>Id.</u> at pp. 6-9).  On May 6, 2016, Udren filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and brief in support.  (Docs. 21, 22).  On May 16, 2016, U.S.

Bank and Ocwen filed a motion to dismiss the amended complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) and brief in support.  (Docs. 23, 24).  On

June 6, 2016, Plaintiffs filed their brief in opposition to the motions to dismiss.

(Doc. 27).  On June 20, 2016, Defendants filed a joint reply brief.  (Doc. 28).  As a

result, the aforementioned motions to dismiss are ripe for disposition.  For the

reasons set forth below, Defendants' respective motions to dismiss filed pursuant

to Federal Rule of Civil Procedure 12(b)(6) will be denied in part and granted in

part.

## I.    STANDARD OF REVIEW

As stated, both motions to dismiss have been brought pursuant to Federal

Rule of Civil Procedure 12(b)(6).  See (Docs. 21-24).  "This rule provides for the

dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim

upon which relief can be granted."  Suessenbach Family v. Access Midstream,

2015 U.S. Dist. LEXIS 40900, at *2 (M.D. Pa. Mar. 31, 2015) (Mannion, J.).  The

moving party bears the burden of showing that no claim has been stated.  Hedges

v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  All factual allegations are

accepted as true and all inferences are construed in the light most favorable to the

non-moving party.  Kaymark v. Bank of Am., N.A., 2015 U.S. App. LEXIS 5548,

at *7 (3d Cir. Apr. 7, 2015) (citing Fleisher v. Standard Ins. Co., 679 F.3d 116,

120 (3d Cir. 2012)).  "[D]ismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Suessenbach Family, 2015 U.S. Dist. LEXIS 40900, at *2 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  The non-moving party's allegations must be sufficient to "raise a right to relief above the speculative level."  Twombly, 550 U.S. at 544.  "This requirement 'calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' necessary elements of the plaintiff's cause of action."  Suessenbach Family, 2015 U.S. Dist. LEXIS 40900, at *2-3 (quoting Twombly, 550 U.S. at 544).  "Furthermore, in order to satisfy federal pleading requirements, the plaintiff must 'provide the grounds of his entitlement to relief,' which 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

"Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient."  Aspinall v. Thomas, 118 F. Supp. 3d 664, 670-71 (M.D. Pa. 2015) (Mannion, J.) (citing Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17

(3d Cir. 2000)).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  <u>Alston v. Parker</u>, 363 F.3d 229, 236 (3d Cir. 2004).

## II.   <u>FACTUAL ALLEGATIONS</u>

Pursuant to the above-discussed motion to dismiss standard of review, all facts are taken from Plaintiffs' amended complaint, (Doc. 14), unless otherwise noted.

On February 7, 2008, Plaintiffs became the owners of the property located at 25 5th Street, Hawley, Pennsylvania 18428.  (<u>Id.</u> at p. 2).  "On or about March 28, 2007, Plaintiffs initiated a mortgage loan with Defendants' predecessor, Imperial Lending, LLC."  (<u>Id.</u>).  On or about November 4, 2010, Plaintiffs filed Chapter 13 bankruptcy in the United States District Court for the Middle District of Pennsylvania.  (<u>Id.</u> at p. 3).  On October 12, 2011, "Ocwen filed a Transfer of Claim document reflecting transfer of servicing rights" regarding Plaintiff's loan "from Litton Loan Servicing, L.P. to Ocwen."  (<u>Id.</u>).  Ocwen "acquired the servicing rights to the mortgage debt disputed herein from Litton Loan Servicing when alleged to be in default."  (<u>Id.</u> at p. 2).

On July 18, 2013, U.S. Bank filed a motion in Plaintiffs' bankruptcy action "for relief from the stay alleging plaintiffs had not made post-petition monthly

mortgage payments beginning February 1, 2013." (Doc. 14, p. 3).  On August 8, 2013, the United States Bankruptcy Court for the Middle District of Pennsylvania "entered an order granting US Bank relief from the stay due to plaintiffs' bankruptcy counsel failing to respond to the motion without the knowledge of the plaintiffs." (Id.).

On June 26, 2014, "Defendants filed a complaint in mortgage foreclosure against Plaintiffs in Wayne County, Pennsylvania Court of Common Pleas." (Id.). In that foreclosure action, "Defendants alleged . . . that plaintiffs had not made post-petition monthly mortgage payments beginning" on September 1, 2013.  (Id.). Defendants "alleged that the aforesaid mortgage was in default in that the payment due on or about September 1, 2013, and alleged that all subsequent payments had not been made."  (Id.).  Plaintiffs "never missed a single payment after relief was granted to" U.S. Bank in the Plaintiffs' bankruptcy action until "Ocwen began returning plaintiffs' payments in January 2014."  (Id.).  Ocwen returned these payments "despite Plaintiffs having copies of checks and bank statements evidencing payment for every month alleged unpaid."  (Id.).  Additionally, "Defendants cashed the checks."  (Id.).

Defendants instituted the underlying mortgage foreclosure action against Plaintiffs "without investigating the claimed default." (Id. at p. 4).  Subsequent to

the complaint being filed in the underlying mortgage foreclosure action, Plaintiffs

"continually informed Defendants of their mistake." (Doc. 14, p. 4).  Defendants,

however, continued to pursue the foreclosure action.  (Id.).  On March 13, 2015, in

the Wayne County Court of Common Pleas, the Honorable Raymond L. Hamill

entered a verdict in favor of Plaintiffs and against Defendants in the underlying

foreclosure action.  (Id.).

On or about October 7, 2015, Plaintiffs "received a discharge of their

chapter 13 bankruptcy wherein they had paid $12,600 in pre-petition arrears to

Ocwen and its predecessor servicer, Litton."  (Id.).  On or about that same date,

Ocwen filed "a Response under BR 3002.1(g)" in Plaintiffs' bankruptcy action

"alleging a post-petition mortgage loan default by plaintiffs for the months [of]

December 1, 2013 through October 1, 2015 in the total amount of $36,851.75."

(Id.).

Based on the foregoing, "Plaintiffs' credit has been damaged causing them

to be unable to purchase a new truck . . . [and they] also have been forced to rent

rather than purchase a new home because they cannot qualify for an affordable

mortgage." (Id.).  Moreover, Plaintiffs spent "approximately $7,000 to retain

attorneys" for their representation in the underlying mortgage foreclosure action.

(Id.).

6

## III.   DISCUSSION

### A.   FDCPA

Both motions currently before the Court argue that Plaintiffs' FDCPA claims concerning the underlying foreclosure action are barred by the FDCPA's one (1) year statute of limitations.  (Doc. 22, p. 7); (Doc. 24, pp. 1, 5, 6-8). According to Udren, "Plaintiffs claim that 'Defendants' violated the FDCPA by falsely filing a foreclosure action to take Plaintiffs' home and that 'Defendants' sent in and out-of-court correspondence concerning the amounts due." (Doc. 22, p. 7).  However, Udren states that Plaintiffs provide "[n]o further specification." (Id.).  Furthermore, Udren argues that since the FDCPA has a one-year (1) statute of limitations, "only alleged FDCPA violations occurring after March 8, 2015 are actionable in this proceeding."  (Id.).  Udren notes that the relevant "Foreclosure Action was filed on June 26, 2014," and "Plaintiffs filed an Answer on September 26, 2014." (Id.).  Udren claims that the "[t]rial occurred [on] March 3, 2015." (Id.).  Thus, Udren concludes, "[t]he alleged communications by Udren 'in and out of court' would have had to occur after March 8, 2015 to fall within the statute of limitations."  (Id.).  But, according to Udren, "[b]ecause all the conduct complained of possibly attributable to Udren occurred more than one (1) year before all of the above dates, it is not actionable under the FDCPA."  (Id.).

7

Udren also argues that while Plaintiffs "make unsupported assertions that the purported FDCPA violations continued through the 'present date,'" they "cannot maintain a 'continuation of violation' theory to somehow toll the date of accrual of their FDCPA claim beyond June 26, 2014, the date of commencement of the mortgage foreclosure action or service of the Complaint on August 26, 2014." (Doc. 22, p. 8). Udren claims that "[i]t is well-settled that a specific date is affixed for the accrual of a purported FDCPA violation . . . and the subsequent course of litigation is not actionable under a 'continuing violation' theory in the context of the FDCPA." (Id.) (quoting Schaffhauser v. Citibank (S.D.) N.A., 340 F. App'x 128, 130 (3d Cir. 2009); citing Parker v. Pressler & Pressler, LLP, 650 F. Supp. 2d 326, 341 (D.N.J. 2009)).

Similarly, U.S. Bank and Ocwen argue that Plaintiffs' FDCPA claims are barred by the FDCPA's one-year (1) statute of limitations. (Doc. 24, p. 6). In particular, U.S. Bank and Ocwen claim that since the instant action was instituted on March 8, 2016, "no action taken prior to March 8, 2015 may form the basis of their claims against Ocwen and U.S. Bank." (Id.). According to U.S. Bank and Ocwen, even assuming, without deciding, that the limitations period began to run in September 2014, when Plaintiffs were served with the foreclosure complaint, the Plaintiffs' "FDCPA claims, premised on improper or 'false' allegations

included in the Foreclosure Action, are clearly time-barred."  (Doc. 24, p. 7).

U.S. Bank and Ocwen also claim that "[a]ny acts taken or statements made by Ocwen or U.S. Bank in the course of the Foreclosure Action do not constitute 'continuing violations' of FDCPA that would re-start the limitations period."  (Id.) (citing Schaffhauser, 340 F. App'x at 130-31; Kimmel v. Phelan Hallinan & Schmeig, PC, 847 F. Supp. 2d 753, 767 (E.D. Pa. 2012); Schaffhauser v. Burton Neil & Assocs., P.C., 2008 U.S. Dist. LEXIS 24894 (M.D. Pa. Mar. 27, 2008) (Rambo, J.)).

Plaintiffs respond by arguing that their FDCPA claims concerning the underlying mortgage foreclosure action should be considered ripe when the foreclosure verdict was handed down in the underlying state court litigation. (Doc. 27-1, pp. 4-9).  Plaintiffs ask the Court to craft "an exception" which would toll "the FDCPA claim from the time of filing or answer given the unique concerns of ripeness, judicial economy and important state interests involved in determining real property issues."  (Id. at p. 5).

In support of their request that the Court adopt this exception to the FDCPA's statute of limitations, Plaintiffs first argue that judicial economy will be served by adopting this exception to the FDCPA's statute of limitations.  (Id.). According to Plaintiff, "[t]he reasoning employed by Federal Courts considering

9

abstention from state court determinations provides a foundation for [P]laintiff[s']
ripeness arguments." (Doc. 27-1, p. 5). Plaintiffs claim that courts within the
Third Circuit that have considered "Younger abstention issues abstain where real
property issues are involved." (Id. at p. 6). Moreover, Plaintiffs state that
"[a]nother category of cases appropriate for abstention involves 'considerations of
[wise] judicial administration, giving regard to conservation of judicial resources
and comprehensive disposition of litigation.'" (Id.) (second alteration and
emphasis in original) (quoting Colo. River Water Conservation Dist. v. United
States, 424 U.S. 800, 817 (1976)). Plaintiffs argue that "[i]nsofar as federal
abstention doctrine dictates that any parallel FDCPA case arising from plaintiff's
standing defense would require the case be stayed anyhow under the Colorado
River abstention doctrine, judicial economy is served by" this Court's rejection the
"argument that tolling of an FDCPA claim based on a foreclosure action is based
on the time of that action's filing or service." (Id.).

According to Plaintiffs, the "Colorado River abstention provides that, under
'exceptional circumstances,' a federal court may abstain from its otherwise
'virtually unflagging obligation' to assert jurisdiction over a case because (1) there
is a parallel case in state court, and (2) after 'careful[ly] balancing' a series of
factors, maintaining the federal case would be a waste of judicial resources." (Id.)

10

(alteration in original) (quoting <u>Moses 4 H Cone Mem'l Hosp. v. Mercury Constr.</u>

<u>Corp.</u>, 460 U.S. 1, 13-16, 19 (1983)).  Plaintiffs argue that "[h]ere the two

proceedings would have easily been considered parallel insofar [as] they 'involve

the same parties and substantially identical claims, raising nearly identical

allegations and issues,' and when plaintiffs in each forum seek the same remedies,

i.e. here, determination as to the validity of the underlying debt in a foreclosure

action." (Doc. 27-1, pp. 6-7) (internal citations omitted).  Plaintiffs also claim that

"five of the six factors clearly argue for abstention with the sixth, convenience of

the federal forum, having a neutral effect." (<u>Id.</u> at p. 7).

        According to Plaintiffs, the argument put forth by Defendants "requires any

foreclosure defendant opposing foreclosure for lack of a defaulted debt to file a

parallel concurrent action to toll the FDCPA statute of limitations despite all

<u>Colorado River</u> and <u>Younger</u> abstention factors arguing for federal court

abstention." (<u>Id.</u> at p. 8).  Moreover, Plaintiffs contend that:

> Extending the Motion's argument to the instant case's facts
> would have resulted in the consequent squandering of not only
> the state court's resources spent for years on a meritless state
> foreclosure claim, but would also have squandered the
> resources of the federal court to carry the FDCPA action on its
> docket as an active matter for such time.

(<u>Id.</u>).  Plaintiffs also claim that:

> filing of an FDCPA claim in federal court against the
> foreclosing parties and their counsel within one (1) year of the
> foreclosure action's filing or service without regard for
> disposition of whether the debt is owed increases the danger of
> the borrower and his counsel having Rule 11 sanctions
> threatened thereby increasing the likelihood of multiplying the
> litigation.

(Doc. 27-1, p. 9).

Plaintiffs also make clear that they are not alleging a continuing violation

theory under the FDCPA.  (Id.).  According to Plaintiffs:

> The case law underlying the Motion's argument that an
> FDCPA claim is broadly tolled by the initiation or service of
> the foreclosure complaint should be distinguished because it
> does not involve foreclosure or standing defense in the
> respective underlying collection actions as discussed above.

(Id.).

Initially, the Court notes that Plaintiffs' FDCPA claims are based on two (2)

sections of the FDCPA and concern actions allegedly taken in two (2) separate

legal proceedings.  (Doc. 14, pp. 5-6).  First, Plaintiffs contend that Ocwen

violated 15 U.S.C. § 1692e(2)(A) of the FDCPA on October 7, 2015, when it

"falsely fil[ed] a Response in the bankruptcy when no post-petition payments were

due."  (Id. at p. 5).  Second, Plaintiffs allege that Ocwen and Udren violated

section 1692e(2)(A) when they "falsely fil[ed] a foreclosure action to take

[Plaintiffs'] home when [Plaintiffs] were not contractually in default under the

Note for payments due." (Doc. 14, p. 5). Notably, Plaintiffs also allege generally

that "Defendants violated § 1692f by engaging in unfair or unconscionable means

to collect or attempt to collect a debt by the aforesaid conduct." (Id. at p. 6).

As to Plaintiff's FDCPA claims, Defendants' respective motions focus on

Plaintiffs' allegations concerning the Defendants' filing of the underlying

foreclosure action and, importantly, do not address Plaintiffs' claim regarding the

"Response" allegedly filed by Ocwen on October 7, 2015, in the "bankruptcy."

See (Doc. 22, pp. 2, 7-8); (Doc. 24, pp. 1-2, 6-7). Consequently, Plaintiffs'

FDCPA claims under sections 1692e(2)(A) and 1692f based on the "Response"

allegedly filed by Ocwen in the "bankruptcy" will be allowed to proceed.

However, Plaintiffs' claim that Ocwen and Udren violated sections

1692e(2)(A) and 1692f of the FDCPA when they filed the underlying mortgage

foreclosure action will not proceed. Pursuant to section 1692k(d) of the FDCPA,

"[a]n action to enforce any liability created by this title . . . may be brought in any

appropriate United States district court without regard to the amount in

controversy, or in any other court of competent jurisdiction, within one [(1)] year

from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Here,

Plaintiffs filed their original complaint on March 8, 2016. Therefore, under

section 1692k(d), Plaintiffs' FDCPA claims which occurred before March 8, 2015,

will be time barred.

To determine whether Plaintiffs' FDCPA claims concerning the underlying mortgage foreclosure action are time barred, the Court must first decide when those claims began to accrue under the FDCPA's statute of limitations. According to the plain language of the FDCPA, the statute of limitations begins to accrue "from the date on which the violation occurs." 15 U.S.C. § 1692k(d). This plain reading is consistent with decisions reached by the United States Court of Appeals for the Third Circuit and the district courts within that jurisdiction. For example, in Schaffhauser v. Citibank, the Third Circuit noted that "[a]n action under the FDCPA must be brought 'within one year from the date on which the violation occurs.'" 340 F. App'x 128, 130 (3d Cir. 2009) (quoting 15 U.S.C. § 1692k(d)). The Third Circuit went on to state that "[w]here FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation,[footnote omitted] courts are split as to when the FDCPA's one-year statute of limitations begins to run . . . ." Id. The Third Circuit continued by noting that "some have held that such claims accrue upon filing the underlying collection action, see Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997), while others use the date on which the purported debtor was served with the complaint." Id. at 131 (citing Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002)). Ultimately, the Third Circuit

determined that it was not necessary to determine which approach applied because "under either approach" the plaintiffs' FDCPA claims were "clearly untimely." Schaffhauser, 340 F. App'x at 131.  Additionally, the Third Circuit also addressed the plaintiffs' argument that "the actions taken by the [] defendants 'constitute a continuing violation,' bringing their otherwise time-barred claims within FDCPA's one-year statute of limitations." Id.  "However," the Third Circuit noted, the plaintiffs "offer no support for their contention that participation in ongoing debt collection litigation qualifies as a 'continuing violation' of the FDCPA, and we are aware of none." Id.  According to the Third Circuit, at the time of its decision "the only circuit court decision addressing this issue has concluded precisely the opposite." Id. (citing Naas, 130 F.3d at 893).  The Court of Appeals went on to state that "[g]enerally, our decisions have limited the continuing violation doctrine to the employment discrimination context." Id. (citing O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006)). Finally, the Third Circuit declined to extend the "continuing violation doctrine" to an FDCPA claim relating to "state court debt collection actions." Id.

A number of district courts within the Third Circuit have found the Third Circuit's non-precedential decision in Schaffhauser to be persuasive, specifically to the extent it determined that the participation in the underlying state court

action did not qualify as a continuing violation.  For example, in Toritto v.

Portfolio Recovery Assocs., LLC, 2016 U.S. Dist. LEXIS 45821 (D.N.J. Apr. 5,

2016), the United States District Court for the District of New Jersey recently

addressed whether a plaintiff's claim that the defendants "violated the FDCPA by

'attempting to collect an alleged debt beyond the statute of limitations' in the state

court action" was barred by the FDCPA's one-year (1) statute of limitations.  Id. at

*3.  The District Court, in reaching its determination that the plaintiffs' claim was

time barred, found Schaffhauser to be "persuasive and on point."  Id. at *4.  In

particular, the District Court stated that "[a]s in Schaffhauser, [the plaintiffs']

claims in this case are 'premised upon allegations of improper pursuit of debt

collection litigation.'"  Id. at *5 (Schaffhauser, 340 F. App'x at 130-31).

Additionally, in Kohar v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS

49599 (W.D. Pa. Apr. 13, 2016), the United States District Court for the Western

District of Pennsylvania noted that:

> The Court of Appeals and numerous District Courts have
> recognized that the one year statute of limitations associated
> with the FDCPA commences upon the invocation of the
> underlying foreclosure litigation and is not generally saved by
> the continuing litigation doctrine.

Id. at *11-12 (citing Schaffhauser, 340 F. App'x at 131; Parker v. Nationstar

Mortg. LLC, 2015 U.S. Dist. LEXIS 145439 (W.D. Pa. Oct. 27, 2015); Amelio v.

McCabe, Weisberg & Conway, P.C., 2015 U.S. Dist. LEXIS 98378 (W.D. Pa. July 28, 2015)); see Rhodes v. US Bank Nat'l Assoc., 2017 U.S. Dist. LEXIS 27578, at *4 n.8 (E.D. Pa. Feb. 28, 2017) (citing Schaffhauser, 340 F. App'x at 131); Living Life v. Deutsche Bank Nat'l Trust Co., 2016 U.S. Dist. LEXIS 50742, at *13 (E.D. Pa. Apr. 15, 2016) (citing Schaffhauser, 340 F. App'x at 130-31).

In Brown v. Udren Law Offices PC, however, the United States District Court for the Eastern District of Pennsylvania distinguished the Third Circuit's decision in Schaffhauser. 2011 U.S. Dist. LEXIS 102004 (E.D. Pa. Sept. 9, 2011). The District Court rejected the defendant's reliance on Schaffhauser in its contention that the plaintiff's "FDCPA claim is barred by the one-year statute of limitations" and that the plaintiff "cannot assert a continuing violation . . . ." Id. at *15-16. The District Court found that the plaintiff's FDCPA claim was not barred "by the statute of limitations because she . . . alleged discrete acts that occurred within the year before she filed her Complaint." Id. at *16. The District Court noted that "FDCPA claims are predicated upon improperly bringing debt collection litigation, the one-year limitations period begins to run–at latest–when the debtor is served with process." Id. (citing Schaffhauser, 340 F. App'x at 130-31). However, "[c]onduct which independently violates the FDCPA, however, is actionable if it falls within the limitations period, even if undertaken in pursuit of

litigation that was filed outside the limitations period." <u>Brown</u>, 2011 U.S. Dist.

LEXIS 102004, at *16 (citing <u>Jones v. Inv. Retrievers, LLC</u>, 2011 U.S. Dist.

LEXIS 44138 (M.D. Pa. Apr. 25, 2011) (Caputo, J.)).

Here, Plaintiffs allege, in relevant part, that Defendants violated section

1692e(2)(A) of the FDCPA when "[b]oth defendants[, Ocwen and Udren,] falsely

fil[ed] a foreclosure action to take plaintiff[s'] home when plaintiffs were not

contractually in default under the Note for payments due."  (Doc. 14, p. 5).

Plaintiffs also allege that "Defendants violated § 1692f by engaging in unfair or

unconscionable means to collect or attempt to collect a debt by the aforesaid

conduct."  (<u>Id.</u> at p. 6).  As alleged, the Defendants filed the complaint in the

underlying mortgage foreclosure action on "June 26, 2014."  (<u>Id.</u> at p. 3).  As a

result, even using June 26, 2014,[1] as the latest available date for statute of

limitations purposes, Plaintiffs' FDCPA claims based on the filing of the

---

[1] The Court notes that the allegations of the amended complaint provide June 26, 2014, as the latest possible date upon which the Plaintiff can rely for purposes of the FDCPA's statute of limitations. <u>See</u> (Doc. 14, p. 4). However, in Udren's brief in support it identifies August 26, 2014, as the date upon which Plaintiffs were served with the complaint in the underlying mortgage foreclosure action. (Doc. 22, p. 8). In Ocwen and U.S. Bank's brief in support, those Defendants state that the Plaintiffs "were served with the Foreclosure Action around September 2014, given that they answered the complaint late in that month and did not assert any service of process objections." (Doc. 24, p. 7). Thus, even if the Court were to take a date "around September 2014," Plaintiffs' FDCPA claims based on the underlying mortgage foreclosure action would be time barred.

underlying mortgage foreclosure action is barred by the FDCPA's one-year statute of limitations.[2]

While Plaintiffs' FDCPA claims concerning the underlying state foreclosure action are barred by the one-year statute of limitations, Plaintiffs request that the Court find that Plaintiffs are entitled to equitable tolling of the FDCPA's statute of limitations.  In particular, Plaintiffs argue that the statute of limitations for FDCPA claims which require the determination of the ultimate issue already before a state court, and thus are subject to federal abstention, be tolled during the pendency of that state court action.  See (Doc. 27-1, pp. 4-9).  In essence, Plaintiffs are asking the Court to carve out an exception to the FDCPA's statute of limitations based on an after the fact determination as to whether abstention would have applied had Plaintiffs filed a federal complaint alleging the FDCPA claims at issue during the pendency of the state court proceeding.  See (Id.).

First, there is a question as to whether equitable tolling is available under the present circumstances.  Specifically, "[e]quitable tolling is appropriate only

---

[2]  Plaintiffs also allege in their amended complaint that "Defendants violated § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect a debt by the aforesaid conduct."  (Doc. 14, p. 6).  To the extent that Plaintiffs are claiming that Defendants alleged actions during the underlying mortgage foreclosure action can support a claim under section 1692f of the FDCPA, that claim is also time barred.

when the statutory time limit is not jurisdictional." Shivone v. Washington Mut.

Bank, F.A., 2008 U.S. Dist. LEXIS 59212, at *4 (E.D. Pa. Aug. 5, 2008).  The

"statute of limitations clause in the FDCPA falls under the heading, 'Jurisdiction,'

and, consequently, there is split authority among the circuits regarding whether or

not the limitations period is jurisdictional, meaning that it would not be subject to

equitable tolling." Rotkiske v. Klemm, 2016 U.S. Dist. LEXIS 32908, at *14

(E.D. Pa. Mar. 15, 2016).  Notably, "[t]he Court notes that the Third Circuit has

not had the occasion to address the question whether the FDCPA's statute of

limitations is jurisdictional." Coles v. Zucker Goldberg & Ackerman, 2015 U.S.

Dist. LEXIS 98628, at *11 n.3 (D.N.J. July 29, 2015); but see Rotkiske, 2016 U.S.

Dist. LEXIS 32908, at *14-15 (noting that "at least two Third Circuit Court of

Appeals cases have considered equitable tolling arguments related to FDCPA

claims.") (citing Kliesh v. Select Portfolio Serv., Inc., 527 F. App'x 102, 104 (3d

Cir. 2013); Glover v. F.D.I.C., 698 F.3d 139, 151 (3d Cir. 2012)).  The Court need

not decide, however, whether the FDCPA's statute of limitations is jurisdictional,

and thus bars application of equitable tolling to FDCPA claims, because Plaintiffs

have failed to establish circumstances necessary for the application of equitable

tolling to their FDCPA claims concerning the underlying mortgage foreclosure

action.

20

"The doctrine of equitable tolling is only applicable when timely filing was prevented by extraordinary or sufficiently inequitable circumstances, and in that regard, equitable tolling should be sparingly applied by courts." <u>Coles</u>, 2015 U.S. Dist. LEXIS 98628, at *10 (citing <u>Santos v. United States</u>, 559 F.3d 189, 197 (3d Cir. 2009); <u>Parker v. Pressler & Pressler, LLP</u>, 650 F. Supp. 2d 326, 340 (D.N.J. 2009); <u>Glover</u>, 698 F.3d at 151; <u>Seitzinger v. Reading Hosp. & Med. Ctr.</u>, 165 F.3d 236, 240 (3d Cir. 1999)). "That said, a plaintiff may be entitled to equitable tolling if the conduct of the defendant prevented the plaintiff from ascertaining the viability of his or her claim within the limitations period." <u>Id.</u> (citing <u>Kliesh</u>, 419 F. App'x at 271).

However, Plaintiffs' amended complaint does not support a determination that Plaintiffs were prevented from timely filing their FDCPA claim by an extraordinary or sufficiently inequitable circumstance. Further, the amended complaint shows that Plaintiffs were not prevented from ascertaining the viability of their FDCPA claim concerning the underlying mortgage foreclosure action within the limitations period by any fraud or concealment done by Defendants. Rather, quite the opposite. The basis of Plaintiffs' claims hinge on their allegation that:

> Plaintiffs never missed a single payment after relief was

> granted to defendant US Bank in the bankruptcy until
> defendant Ocwen began returning plaintiffs' payments in
> January 2014 despite Plaintiffs having copies of checks and
> bank statements evidencing payment for every month alleged
> unpaid.  Furthermore, Defendants cashed the checks.

(Doc. 14, pp. 3-4).  Notably, Plaintiffs continue by alleging that "[e]ven after the

complaint in foreclosure was filed, and Plaintiffs continually informed Defendants

of their mistake, Defendants pursued their meritless claim."  (Id. at p. 4).  These

allegations run opposite to any argument that Defendants prevented Plaintiffs from

ascertaining the viability of their FDCPA claim concerning the underlying

mortgage foreclosure action within that Act's limitations period.  Thus, even if the

Court were to find that equitable tolling is allowed in FDCPA actions, Plaintiffs'

request to apply equitable tolling to their FDCPA claims concerning their

underlying mortgage foreclosure action is denied.

Furthermore, Plaintiffs' equitable tolling argument relies on the speculative

conclusion that the Court would have found that this case was subject to federal

abstention.  Moreover, had Plaintiffs filed a complaint within the applicable

statute of limitations, and during the pendency of the state court proceeding, the

Court may have issued a stay, as opposed to dismissing the federal case.  Also,

adopting the mechanism proposed by Plaintiffs most likely would not avoid an

abstention determination and, thus, conserve judicial resources.  Rather, as would

be the case here if Plaintiffs' argument was accepted, such a principle would just prolong that determination until the defendants move for relief under Federal Rule of Civil Procedure 12(b).  Since the abstention determination most likely would be made regardless of when the federal complaint is filed, the Court does not find it necessary to prolong such a determination and, simultaneously, create a new equitable tolling exception to the FDCPA's statute of limitations.

Additionally, as noted, the accrual date for causes of action concerning prosecutions of underlying state court actions concerning a "debt" has been determined to be, at the latest, when the consumer is served with the complaint and summons in that action.  See Schaffhauser, 340 F. App'x at 130.  If the Court were to adopt the equitable tolling exception proposed by Plaintiffs, the accrual date in most, if not all, cases where it is alleged that the defendant(s) violated the FDCPA by bringing and prosecuting an underlying action would become meaningless.  Specifically, adopting this exception would, in effect, create a new accrual date for such actions, which would occur when the favorable verdict in the underlying case has been rendered.

Based on these reasons, it is determined that Plaintiffs' request for this Court to apply an equitable tolling exception to the FDCPA's statute of limitations will be denied.  Therefore, Plaintiffs' FDCPA claims based upon Plaintiffs'

23

underlying mortgage foreclosure action are barred by the FDCPA's statute of limitations and, thus, will be dismissed.  Additionally, since amendment of these claims would be futile, leave to amend will not be granted.  As a result, Plaintiffs' FDCPA claims concerning the underlying mortgage foreclosure action will be dismissed with prejudice.  Finally, as noted above, Plaintiffs' FDCPA claims based on the "Response" allegedly filed by Ocwen in the "bankruptcy," see (Doc. 14, p. 5), will be allowed to proceed.

> B.   State Law Claims

>> i.   Wrongful Use of Civil Proceedings

Plaintiffs also claim that Defendants wrongfully used civil proceedings against them in violation of Pennsylvania's Dragonetti Act, 42 PA. CON. STAT. ANN. §§ 8351-8354.  (Doc. 14, p. 6).  As noted, Plaintiffs allege that "Defendants caused the underlying mortgage foreclosure litigation to be instituted against Plaintiffs."  (Id.).  Further, Defendants allegedly "commenced, continued and/or prosecuted underlying litigation . . . against the Plaintiffs without probable cause." (Id.).  According to Plaintiffs, the "underlying litigation was commenced and continued by Defendants and against Plaintiffs with malice and/or reckless indifference to the rights and interest of Plaintiffs."  (Id.).  Further, the underlying litigation "was terminated in Plaintiffs' favor, by way of the entry of an Order of

the Court . . . ."  (Doc. 14, p. 6).

Udren argues that Plaintiff's Dragonetti claim "cannot be maintained when Plaintiffs failed to contest a final Bankruptcy Court Order, failed to properly assert their defenses in state court pleadings, and [fails] by their own pleaded admissions and filings."  (Doc. 22, p. 8).  Udren continues by arguing that "Plaintiffs cannot show, inter alia, that Udren acted in a grossly negligent manner or lacked probable cause because the mortgage default was established conclusively by the [Order on U.S. Bank's Motion for Relief from Automatic Stay], Confirmed Plan and their admissions."  (Id. at p. 9).  According to Udren, "[t]he [Order on U.S. Bank's Motion for Relief from Automatic Stay] and Confirmed Plan conclusively establish that the Plaintiffs failed to maintain both post-petition and pre-petition mortgage obligations."  (Id.).  Udren argues that "Plaintiffs are bound by these facts."  (Id.).

Specifically, Udren contends that the Order on U.S. Bank's Motion for Relief from Automatic Stay "conclusively establishes the Plaintiff's post-petition mortgage default."  (Id.).  Udren states that 11 U.S.C. § 362(d) "authorizes the court to grant relief from the automatic stay, in the form of an order 'terminating, annulling, modifying or conditioning' the automatic stay, for 'cause.'"  (Id.) (quoting 11 U.S.C. § 362(d)).  Thus, according to Udren, section 362(d) requires

the moving party to satisfy their initial burden to "demonstrate cause for relief." (Doc. 22, p. 10) (citing In re Ward, 837 F.2d 124, 128 (3d Cir. 1988)).

Additionally, Udren notes, "[a] bankruptcy court's order granting relief from the automatic stay constitutes a final order." (Id.) (citing In re Comer, 716, F.2d 168, 172 (3d Cir. 1983)).  As a result, Udren concludes, "the Order granting relief to US Bank in the Bankruptcy Action is a final order." (Id.).  Moreover, Udren notes that "Plaintiffs did not (1) oppose" U.S. Bank's motion for relief from automatic stay; "(2) respond to the CNR; (3) move to strike or reconsider the MFR Order; (4) timely appeal the MFR Order; or, (5) move to reinstate the automatic stay." (Id.) (citing Doc. 22-2).  "Therefore," Udren concludes, "Plaintiffs are bound by the MFR Order and Udren may rely on the MFR Order establishing a default necessitating a foreclosure action." (Id.).

Udren also argues that "the Confirmed Plan to cure the default proposed by Plaintiffs in their bankruptcy and subsequently confirmed by Court Order is binding and conclusive upon Plaintiffs." (Id.) (emphasis in original).  Udren contends that Plaintiffs are bound by the Confirmed Plan, "which provide[s] that Plaintiffs owed US Bank pre-petition arrears[footnote omitted] of $14,607.81." (Id.).  Udren points out that "Plaintiffs admit in their Amended Complaint that they only paid '$12,600 in pre-petition arrears' through bankruptcy, leaving a

deficiency of $2,007.81." (Doc. 22, pp. 10-11) (citing Doc. 22-1). Therefore,

Udren concludes, "Plaintiffs . . . admit they have not cured the pre-petition

amounts through bankruptcy." (Id. at p. 11). As a result, Udren argues that since

the "[p]re- and post-petition payment defaults are conclusively established through

the record . . . [it] cannot be held liable under Dragonetti for representing a lender

that commence[d] a lawsuit against borrowers with an established default." (Id.)

(citing Docs. 22-1, 22-3, 22-6).

Udren also claims that "judicial estoppel 'applies to preclude a party from

assuming a position in a legal proceeding inconsistent with one previously

asserted.'" (Id.) (quoting Oneida Motor Freight Inc. v. United Jersey Bank, et al.,

848 F.2d 414, 419 (3d Cir. 1988)). Here, Udren states that:

> Plaintiffs confusingly and unartfully state, "Plaintiffs never
> missed a single payment after relief was granted to defendant
> US Bank in the bankruptcy until defendant Ocwen began
> returning plaintiffs' payments in January 2014despite [sic]
> Plaintiffs having copies of checks and bank statements
> evidencing payment for every month alleged unpaid."

(Id.) (citing Doc. 22-1).

Udren continues by contending that Plaintiffs' wrongful use of civil

proceedings claim should be dismissed because even if the Court assumes "the

absence of judicial admission of default by Plaintiffs in the bankruptcy

proceeding, Plaintiffs' failure to effectively raise or plead defenses in the Foreclosure Action further buffers Udren from liability." (Doc. 22, p. 12). According to Udren, Plaintiffs did not plead any facts in the foreclosure action "which would have placed Udren on notice that Plaintiffs' claim of payment demanded investigation." (Id.). Udren argues that in Pennsylvania the defense of payment "must be pled in New Matter or waived." (Id.) (citing Pa.R.C.P. 1030(a), (b); Pa.R.C.P. 1033(a)). Udren claims that "Plaintiffs waived their claim of payment for failure to raise it as a defense in the foreclosure and cannot establish that Udren's primary purpose for which the proceedings were brought was not 'that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.'" (Id.).

Finally, Udren argues that "Plaintiffs prevailed at trial <u>not</u> because the Plaintiffs proved they were 'current' or the foreclosure was wrongful; rather, because US Bank failed to meet its burden of proof because business records were determined to be embedded with hearsay." (Id.). Merely prevailing at trial, according to Udren, "does not support a Dragonetti claim . . . ." (Id.).

U.S Bank and Ocwen likewise move to dismiss Plaintiffs' Dragonetti Act claim. (Doc. 24, pp. 8-11). According to U.S. Bank and Ocwen, Plaintiffs' "Dragonetti Act claim fails for two reasons: (1) defendants had probable cause to

commence the Foreclosure Action; and (2) the [Plaintiffs] failed to allege that

defendants commenced the Foreclosure Action for an improper purpose."  (Doc.

24, p. 8).

In regards to their first point, U.S. Bank and Ocwen argue that "[t]he

publicly-filed bankruptcy records demonstrate that Ocwen and U.S. Bank had

probable cause to initiate the Foreclosure Action."  (Id.).  Specifically, "[t]he MFR

Order and Confirmed Plan establish that the [Plaintiffs] failed to maintain both

post-petition and pre-petition mortgage obligations."  (Id. at p. 9).  According to

U.S Bank and Ocwen, "[t]he MFR Order, in particular, establishes [Plaintiffs]

post-petition mortgage default."  (Id.).  U.S. Bank and Ocwen state that "[t]he

Bankruptcy Code authorizes the court to grant relief from the automatic stay, in

the form of an order 'terminating, annulling, modifying or conditioning' the

automatic stay, for 'cause.'"  (Id.) (quoting 11 U.S.C. § 362(d)).  "Under §

326(d)," U.S. Bank and Ocwen assert, "the party seeking relief from the stay has

an initial burden to demonstrate cause for relief."  (Id.) (citing In re Ward, 837

F.2d at 128).  Additionally, U.S. Bank and Ocwen state that "[a] bankruptcy

court's order granting relief from the automatic stay constitutes a final order."

(Id.) (citing In re Comer, 716 F.2d at 172).  U.S. Bank and Ocwen claim that

Plaintiffs "did not oppose the MFR or challenge the MFR Order once it was

entered." (Doc. 24, p. 9). "Thus, Ocwen and U.S. Bank appropriately relied on the MFR Order to commence the Foreclosure Action." (Id.).

In regard to the "Confirmed Plan," U.S. Bank and Ocwen argue that it "binds" Plaintiffs. (Id.). According to U.S. Bank and Ocwen, "[a] confirmed plan constitutes a new contract between the debtor and creditors." (Id.) (citing In re Pabilla, 379 B.R. 643, 663 (Bankr. S.D. Tex. 2007)). Moreover, U.S. Bank and Ocwen state that "[t]he confirmation order judicially validates the plan as the new 'contract' between the debtor and the creditors whose rights are addressed in the plan, with the plan either supplementing or superseding the prepetition legal relationship between the debtor and the creditors." (Id.) (citing In re McDonald, 336 B.R. 380, 383 (Bankr. N.D. Ill. 2006); In re Turek, 346 B.R. 350, 354-55 (Bankr. M.D. Pa. 2006); In re Miller, 325 B.R. 539, 543 (Bankr. W.D. Pa. 2005); In re Bryant, 323 B.R. 635, 639 (Bankr. E.D. Pa. 2005)). U.S. Bank and Ocwen continue by stating that "[s]ection 1327(a) of the Bankruptcy Code provides: 'The provisions of a confirmed plan bind the debtor and each creditor.'" (Id.). As a result, U.S. Bank and Ocwen conclude, Plaintiffs are "bound by the terms of the Confirmed Plan, which provides that they owed U.S. Bank and Ocwen pre-petition arrears of $14,607.81." (Id.). As U.S. Bank and Ocwen point out, Plaintiffs "admit in their Amended Complaint that they only paid '$12.600 in pre-petition

arrears' through bankruptcy, leaving a deficiency of $2,007.81." (Doc. 24, pp. 9-10).  Consequently, U.S. Bank and Ocwen conclude that "[t]he fact on which [they] based the foreclosure action were not merely 'reasonably believed' by them, those facts were established by the MFR Order and Confirmed Plan."  (Id. at p. 10).  Therefore, U.S. Bank and Ocwen argue that they had "probable cause to assert that the [Plaintiffs] had defaulted and to initiate foreclosure against them, and thus the Dragonetti Act claim must fail."  (Id.).

Additioanlly, U.S. Bank and Ocwen seek dismissal of Plaintiff's Dragonetti claim because Plaintiffs failed to allege that the primary purpose for the foreclosure action was for a purpose other than adjudicating the foreclosure action. (Id.).  Specifically, U.S. Bank and Ocwen argue that the Plaintiffs do "not allege any facts, or even legal conclusions, regarding the defendants' alleged primary purpose in bringing the Foreclosure Action."  (Id.).  While U.S. Bank and Ocwen acknowledge that Plaintiffs do allege that Defendants "did not properly investigate their claims before asserting them," they claim that Plaintiffs "do not state that [U.S. Bank and Ocwen] initiated the Foreclosure Action for an improper purpose." (Id.).  According to U.S. Bank and Ocwen, "[t]he gist of the claim is that defendants were incorrect to assert [Plaintiffs] were in default, not that defendants initiated the Foreclosure Action for a purpose other than the relief sought on the

face of their pleadings."  (Doc. 24, p. 10).

Plaintiffs respond by arguing that "[n]o pleading filed or ruling entered in either Plaintiffs' Bankruptcy or the Foreclosure Action substantively bars Plaintiffs' Dragonetti claim . . . ."  (Doc. 27-1, p. 9).  Initially, Plaintiff claims that since "none of [Defendants'] Exhibits A through J are attached by plaintiffs as Exhibits to their complaint" and the motions are brought under Federal Rule of Civil Procedure 12(b)(6), all of Defendants' "exhibits are procedurally defective and should be stricken."  (Id. at p. 10).  Additionally, according to Plaintiffs, "[n]otwithstanding the procedurally defective nature of the Exhibits, Movant's arguments based thereon are substantively unavailing."  (Id.).  In particular, Plaintiffs claim that the "Exhibits are irrelevant to a determination of Plaintiffs' Dragonetti claim premised on the continued prosecution of the foreclosure action without probable cause . . . ."  (Id.).

Plaintiffs then address the argument advanced by U.S. Bank and Ocwen that the bankruptcy filings, specifically the Confirmed Plan, bar the Dragonetti claim.  (Id. at pp. 10-11).  According to Plaintiffs, the "Plan is irrelevant to determining any post-petition default by plaintiffs to support probable cause to prosecute the 2014 foreclosure action by defendants three (3) years later."  (Id. at p. 10).

Defendants, in their joint reply addressing Plaintiffs' Dragonetti claim, first

32

contend that the exhibits they attached to their respective filings are properly

before the Court because "a court may also consider public documents and prior

judicial proceedings in evaluating a motion to dismiss" and Plaintiffs "expressly

reference many of the documents attached to Defendants' motions in their

amended complaint." (Doc. 28, p. 5). Defendants then argue that Plaintiffs' "miss

the point" on the impact of the "MFR Order." (Id. at pp. 5-6). In particular,

Defendants state that "not only did the MFR Order establish the [Plaintiffs']

default, but that it gave Defendants probable cause to file the Foreclosure Action."

(Id. at p. 6). "After all," Defendants continue, "the motion for relief from the

automatic stay alleged that [Plaintiffs] had post-petition arrears, and [Plaintiffs],

who were represented by counsel in the bankruptcy action, did not contest that

point, and allowed the MFR Order to be entered." (Id.). "In short, when

Defendants told the bankruptcy court that [Plaintiffs] were behind in their

mortgage payments, [Plaintiffs] stayed silent, allowing the bankruptcy judge to

enter a final order that expressly permitted the Foreclosure Action to be filed."

(Id.). As a result, Defendants argue, Plaintiffs' Dragonetti claim should be barred

because the foreclosure action was brought for a proper purpose. (Id.).

Turning first to the exhibits attached to Defendants' respective briefs in

support, it should be noted that "[t]o decide a motion to dismiss, courts generally

consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Said differently, the United States Court of Appeals for the Third Circuit has stated that "[i]n evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, [Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002)], and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (second alteration in original) (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, Federal Practice & Procedure § 1357 (3d ed. 2004)); see Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) ("[a] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claim are based on the document."). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Additionally, a court "may take judicial notice of the contents of another Court's docket." Orabi v. Attorney Gen. of the U.S., 738 F.3d 535, 537

n.1 (3d Cir. 2014).  Moreover, "[t]aking judicial notice of the existence of other

proceedings does not convert a motion to dismiss into a motion for summary

judgment as long as the court does not take judicial notice of those proceedings to

find facts."  In re Able Labs. Sec. Litig., 2008 U.S. Dist. LEXIS 23538, at *62

n.21 (D.N.J. Mar. 24, 2008) (citing S. Cross Overseas Agencies, Inc. v. Wah

Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999); Global Network

Comm. Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006)).

"The rationale underlying this exception is that the primary problem raised

by looking to documents outside the complaint–lack of notice to the plaintiff–is

dissipated 'where plaintiff has actual notice . . . and has relied upon these

documents in framing the complaint.'"  In re Burlington Coat Factory Sec. Litig.,

114 F.3d at 1426 (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993);

citing San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris

Cos., Inc., 75 F.3d 801, 808-09 (2d Cir. 1996)).  "What the rule seeks to prevent is

the situation in which a plaintiff is able to maintain a claim of fraud by extracting

an isolated statement from a document and placing it in the complaint, even

though if the statement were examined in the full context of the document, it

would be clear that the statement was not fraudulent."  Id. (citing Shaw v. Digital

Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).  Thus. "[w]hen a plaintiff relies

on a document without attaching it to the complaint, the plaintiff nevertheless has notice that the document will be at issue." Hughes v. UPS, 639 F. App'x 99, 103 (3d Cir. 2016) (non-binding precedent) (citing Schmidt, 770 F.3d at 249). "Indeed, failure to consider such documents would raise the countervailing concern that 'a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied.'" Id. (quoting Pension Benefit, 998 F.2d at 1196).

Defendants have attempted to incorporate a number of documents into the motion to dismiss record which they contend are relevant to Plaintiffs' Dragonetti claim. See (Doc. 22); (Doc. 24).  First, of those documents produced by Defendants for purposes of their respective motions to dismiss, Plaintiffs specifically cited to the following in their amended complaint: 1) U.S. Bank's motion for relief from stay filed on July 18, 2013, in the Plaintiffs' action in the United States Bankruptcy Court for the Middle District of Pennsylvania; 2) an August 8, 2013 order issued by the Bankruptcy Court; 3) Defendants' June 26, 2014 foreclosure complaint filed against Plaintiffs in the Court of Common Pleas of Wayne County, Pennsylvania; 4) the March 13, 2015 verdict rendered in the underlying mortgage foreclosure action; 5) Plaintiffs' discharge received in the bankruptcy action for their payment of $12,600 in pre-petition arrears to Ocwen;

and 6) Ocwen's October 7, 2015 response filed in the bankruptcy action, which alleged that Plaintiffs' had a post-petition mortgage loan default from December 1, 2013 through October 1, 2015 in the total amount of $36,851.75.  See (Doc. 14, pp. 3-4).  Plaintiffs' discussion of these documents establishes that they were at the very least aware of their existence at the time they filed their amended complaint.  Moreover, if this Court did not consider the aforementioned documents invoked by Plaintiffs' in their amended complaint such an action would "raise the concerns addressed in Pension Benefit[], 998 F2d at 1196." Hughes, 2016 U.S. App. LEXIS 1682, at *8.  Finally, there is no dispute as to the authenticity of these documents Defendants are attempting to incorporate into the motion to dismiss record.  See (Doc. 27-1, pp. 9-10).

Additionally, the pertinent exhibits at issue were filed in judicial proceedings.  See (Docs. 22-4, 22-6, 22-7, 24-3, 24-4, 24-5); In re Bainbridge, No. 10-9019 (Bankr. M.D. Pa. filed Nov. 4, 2010).  As discussed above, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint."  S. Cross Overseas Agencies, 181 F.3d at 426 (citing City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); Pension Benefit, 998 F.2d at 1196; Iacaponi v. New Amsterdam Cas. Co., 379 F.2d 311, 311-12 (3d Cir. 1967); In re Woodmar Realty

37

Co., 294 F.2d 785, 788 (7th Cir. 1961); DiNicola v. DiPaolo, 945 F. Supp. 848, 855 n.2 (W.D. Pa. 1996); Kithcart v. Metro. Life Ins. Co., 62 F. Supp. 93, 94 (W.D. Mo. 1944)). Notably, "if facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not to be deemed as true upon consideration of the motion to dismiss." Smith v. Litton Loan Servicing, LP, 2005 U.S. Dist. LEXIS 1815, at *18 (E.D. Pa. Feb. 4, 2005) (citing 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1364 (2004)).

Therefore, based on the foregoing, it is determined that the aforementioned exhibts attached to Defendants respective briefs in support will be considered in reaching a determination concerning the instant motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) challenging, inter alia, Plaintiffs' Dragonetti claims. Thus, with that in mind, the Court will now turn to the merits of the respective argument advanced by Defendants concerning Plaintiffs' Dragonetti claims.

"The Dragonetti Act codifies the common law tort of wrongful use of civil proceedings in Pennsylvania." Schmidt v. Currie, 217 F. App'x 153, 155 (3d Cir. 2007) (citing 42 PA. CON. STAT. ANN. §§ 8351-8354). "Dragonetti Act claims may be brought against parties and the attorneys that represent them." Id. (citing

42 PA. CON. STAT. ANN. §§ 8351-8354).  The United States Court of Appeals for

the Third Circuit has stated that:

> A Dragonetti Act claim for wrongful use of civil proceedings
> has five elements, that: (1) the current plaintiff prevailed in the
> underlying actions; (2) the defendants acted in a grossly
> negligent manner or without probable cause; (3) the defendant
> had an improper purpose in pursuing the underlying action; (4)
> the proceedings terminated in favor of the plaintiff; and (5) the
> plaintiff was harmed.

The Bobrick Corp. v. Santana Prods., Inc., 422 F. App'x 84, 86 (3d Cir. 2011)

(citing 42 PA. CONS. STAT. ANN. §§ 8351(a), 8352; McNeil v. Jordan, 586 Pa. 413

(2006)); see Schmidt, 217 F. App'x 153, 155 (3d Cir. 2007) ("To prevail on a

Dragonetti Act claim, a plaintiff must prove that 'a person who [took] part in the

procurement, initiation or continuation of civil proceedings against another . . . .

(1) [acted] in a grossly negligent manner or without probable cause and primarily

for [an improper] purpose . . .; and (2) the proceedings . . . terminated in favor of

the person against whom they [were] brought.'") (quoting 42 PA. CON. STAT. ANN.

§§ 8351-8354).  The Dragonetti Act defines "probable cause" as follows:

> A person who takes part in the procurement, initiation or
> continuation of civil proceedings against another has probable
> cause for doing so if he reasonable believes in the existence of
> the facts upon which the claim is based, and either (1)
> reasonably believes that under those facts the claim may be
> valid under the existing or developing law; (2) believes to this
> effect in reliance upon the advice of counsel, sought in good

faith and given after full disclosure of all relevant facts within his knowledge and information; or (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 PA. CON. STAT. ANN. § 8352. "The existence of probable cause does not automatically defeat a Dragonetti Act claim" because gross negligence can also serve as a basis for liability in a Dragonetti Act claim. Peek v. Whittaker, 2014 U.S. Dist. LEXIS 70461, at *15-16 (W.D. Pa. May 22, 2014) (citing Buchleitner v. Perer, 794 A.2d 366, 377-78 (Pa. Super. Ct. 2002)). "In the context of a Dragonetti action, Pennsylvania courts have defined gross negligence to mean the 'want of scant care' or 'lack of slight diligence or care, or a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages.'" Schmidt v. Currie, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005) (quoting Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. Ct. 2001)).

The United States Court of Appeals for the Third Circuit has stated that "a party seeking redress under [the] Dragonetti [Act] bears a heavy burden." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002). Specifically, the plaintiff bringing a Dragonetti Act claim bears such a burden "because the plaintiff need not only demonstrate either probable cause or gross negligence, but must also

prove the underlying action was filed for an improper purpose." Currie, 217 F.

App'x at 155 (citing Broadwater v. Senter, 725 A.2d 779, 784 (Pa. Super. Ct.

1999)).  However, "[a]n improper purpose may . . . be inferred if the action is filed

without probable cause." Peek, 2014 U.S. Dist. LEXIS 70461, at *22 n.8 (citing

Logan v. Salem Baptist Church of Jenkintown, 2010 U.S. Dist. LEXIS 86916

(E.D. Pa. Aug. 24, 2010)); see Perelman v. Perelman, 125 A.3d 1259, 1264 (Pa.

Super. 2015) (quoting Gentzler v. Atlee, 660 A.2d 1378, 1385 (1995)).  Said

differently, the Pennsylvania Superior Court has stated that "an improper purpose

'may be inferred where the action is filed without justification.'" Regent Ins. Co.

v. Strausser Enters., 902 F. Supp. 2d 628, 640 n.34 (E.D. Pa. 2012) (quoting

Broadwater, 725 A.2d at 784).  "Thus, a claim for wrongful use of civil

proceedings will lie 'if the trier of fact could reasonably conclude that the

defendant initiated the underlying lawsuit without probable cause.'" Perelman,

125 A.3d at 1264 (quoting Gentzler, 660 A.2d at 1385).

Turning first to Defendants respective arguments concerning the impact of

the Bankruptcy Court's grant of relief from automatic stay, it is determined that

these contentions are without merit.  Relief from the automatic stay in a

bankruptcy action is governed by 11 U.S.C. § 362(d).  Pursuant to section

362(d)(1), relief from the stay shall be granted "for cause, including the lack of

adequate protection of an interest in property of such party in interest." In re

Stone Res., Inc., 482 F. App'x 719, 722 (3d Cir. 2012) (quoting 11 U.S.C. §

362(d)(1)). "'Cause' is not a defined term in the Bankruptcy Code . . . ." 1

BANKRUPTCY LAW MANUAL § 7:53 (5th ed.). "[B]ecause § 362(d)(1) does not

define 'cause,' bankruptcy courts have the discretion to consider what constitutes

cause based on the totality of the circumstances." In re Flintkote Co., 533 B.R.

887, 894 (D. Del. 2015) (citing In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997)).

Here, the Bankruptcy Court found sufficient "cause" to grant relief from the

automatic stay because of the "failure of the Debtor to file an Answer or otherwise

plead as directed by the Court . . . ." (Doc. 22-6).  As a result, even if the Order

issued by the Bankruptcy Court had preclusive effect on the instant Dragonetti

claim, the Order does not provide enough for this Court to say as a matter of law

that the Order established "probable cause" to bring the underlying mortgage

foreclosure action, much less to continue that action.  Therefore, the Court will

deny Defendants' respective motions to dismiss to the extent that they argue

Plaintiffs' Dragonetti claim should be dismissed due to the Bankruptcy Court's

order dated August 6, 2013.

As for Defendants' respective arguments that Plaintiffs' Dragonetti claims

should be dismissed because of the Confirmed Plan dated April 15, 2011, see

(Doc. 22, pp. 10-11); (Doc. 24, pp. 9-10), those contentions also are without merit. As stated, Defendants argue that Plaintiffs' admission that they only paid $12,600.00 of the "$14,607.81" pre-petition arrears establishes a deficiency of approximately $2,000.00.  (Id.).  This deficiency, according to Defendants, shows that Plaintiffs admit that "they have not cured the pre-petition amounts through bankruptcy."  (Doc. 22, p. 11); (Doc. 24, pp. 9-10).  However, what the Defendants leave out of this argument is a mention of the Plaintiffs' allegation concerning the Bankruptcy Court's October 7, 2015 discharge of Plaintiffs' "chapter 13 bankruptcy."  See (Doc. 14, p. 4).  Specifically, as alleged by Plaintiffs in their amended complaint, on October 7, 2015, they "received a discharge of their chapter 13 bankruptcy wherein they had paid $12,600 in pre-petition arrears to Ocwen and its predecessor servicer, Litton."[3]  (Id.).  Moreover, Plaintiffs allege that they "never missed a single payment after relief was granted to defendant US Bank in the bankruptcy until defendant began returning plaintiffs' payments in January 2014 despite Plaintiffs having copies of checks and bank statements evidencing payments for every month alleged unpaid."  (Id. at pp. 4-5).  Thus,

---

[3]  "The discharge of a debt operates as an injunction against efforts to collect the discharged debt, and a discharge voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged."  8B C.J.S. BANKRUPTCY § 1075 (March 2017).

taking these allegations as true and construing all inferences in the light most favorable to the non-moving party, Plaintiffs' allegation that they paid "$12,600" in pre-petition arrears does not establish, as a matter of law, that Plaintiffs' have failed to state a Dragonetti claim upon which relief may be granted.  Therefore, Defendants' respective arguments based upon the Confirmed Plan issued on April 15, 2011, will be denied.

As noted, Udren also claims that Plaintiffs have failed to state claim under Dragonetti because judicial estoppel applies.  See (Doc. 22, pp. 11-12).  However, this claim also fails.  "Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion."  In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).  "It rests on the basic notion that, '"absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."'"  Semper v. Gomez, 747 F.3d 229, 247 (3d Cir. 2014) (quoting In re Kane, 628 F.3d at 638).

Importantly, Udren has not identified two (2) contrary positions taken by Plaintiffs which would allow for the application of this equitable doctrine.  See (Doc. 22, pp. 11-12).  Further, "'judicial estoppel is generally not appropriate where the defending party did not convince the [court] to accept its earlier position.'"  Semper, 747 F.3d at 249 (alterations in original) (quoting G-Holdings,

Inc. v. Reliance Ins. Co., 586 F.3d 247, 262 (3d Cir. 2009)); see also Montrose

Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 781 (3d Cir. 2001).

Udren has not established that Plaintiffs' were successful in advancing their

contrary position.  See (Doc. 22, pp. 11-12).  Rather, as stated by Udren,

"Plaintiffs prevailed at trial not because the Plaintiffs proved they were 'current'

or the foreclosure was wrongful; rather, because US Bank failed to meet its burden

of proof because business records were determined to be embedded with hearsay."

(Id. at p. 12).  As a result, that factor also supports the finding that Udren's judicial

estoppel claim lacks merit.

Udren's claim that Plaintiffs failed to "effectively raise or plead defenses in

the Foreclosure Action further buffers [it] from liability," (Id.), also does not

establish that its entitled to dismissal of Plaintiffs' Dragonetti claim.  According to

Udren, "[t]here are no facts pleaded of record in the foreclosure which would have

placed Udren on notice that Plaintiffs' claim of payment demanded investigation."

(Id.).  However, "[i]n an action for mortgage foreclosure, the entry of summary

judgment is proper if the mortgagors admit that the mortgage is in default, that

they have failed to pay interest on the obligation, and that the recorded mortgage is

in the specified amount."  Cunningham v. McWilliams, 714 A.2d 1054, 1057 (Pa.

Super. Ct. 1998) (citing Landau v. W. Pa. Nat'l Bank, 282 A.2d 335, 340 (1971)).

Clearly, an element of the mortgage foreclosure action in Pennsylvania is the

establishment that the defendant defaulted on the mortgage obligation.

Cunningham, 714 A.2d at 1057.  Thus, by brining the mortgage foreclosure suit,

Defendants would have been on notice that an investigation into Plaintiffs'

payments on the obligation in question would have been necessary to establish, in

part, Defendants' entitlement to judgment on that claim.  As a result, the Court

rejects Udren's contention that Plaintiffs' failure to "effectively raise or plead

defenses in the Foreclosure Action further buffers [it] from liability" because

Plaintiffs' payment on, or lack thereof, the mortgage obligation was a central

factual question in the underlying foreclosure action.  See (Doc. 22, p. 12).  Such a

conclusion is supported by the Court of Common Pleas entering judgment in favor

of Plaintiffs because their default was not established by the evidence presented at

trial.  (Doc. 24-7).  As a result, Udren's motion to dismiss on this ground will be

denied.

    As for Defendants U.S. Bank and Ocwen's claim that Plaintiffs have failed

to allege that Ocwen or U.S. Bank filed the underlying mortgage foreclosure

action for an improper purpose, that claims is also without merit.  (Id. at pp. 10-

11).  "An improper purpose is 'a purpose other than that of securing the proper

discovery, joinder of parties or adjudication of the claim in which the proceedings

46

are based.'"  <u>Montgomery v. Midland Credit Mgmt.</u>, 2014 U.S. Dist. LEXIS

100327, at *22 (E.D. Pa. June 19, 2014) (quoting 42 Pa. C.S.A. § 8351(a)(1)).

However, "a claim for wrongful use of civil proceedings will lie 'if the trier of fact

could reasonably conclude that the defendant initiated the underlying lawsuit

without probable cause.'"  <u>Perelman</u>, 125 A.3d at 1264 (quoting <u>Gentzler</u>, 660

A.2d at 1385).   Here, Plaintiffs allege that "[e]ven after the complaint in

foreclosure was filed, and Plaintiffs continually informed Defendants of their

mistake, Defendants pursued their meritless claim." (Doc. 14, p. 4).  They also

claim that Defendants "initiated the foreclosure litigation against Plaintiffs without

investigating the claimed default whatsoever." (<u>Id.</u>).  Further, Plaintiffs allege that

they "never missed a single payment after relief was granted to defendant US Bank

in the bankruptcy until defendant began returning plaintiffs' payments in January

2014 despite Plaintiffs having copies of checks and bank statements evidencing

payments for every month alleged unpaid." (<u>Id.</u> at pp. 4-5).  Taking these

allegations as true and every inference in favor of the Plaintiffs, it is at least

plausible that Plaintiffs can show, after discovery, that Defendants Ocwen and

U.S. Bank filed the underlying mortgage foreclosure action without justification

and, thus, for an improper purpose.  42 Pa. C.S. § 8354(4); <u>see</u> <u>Perelman</u>, 125 A.3d

at 1264 (quoting <u>Gentzler</u>, 660 A.2d at 1385); <u>Regent Ins. Co.</u>, 902 F. Supp. 2d at

640 n.34 (quoting <u>Broadwater</u>, 725 A.2d at 784); <u>Ciolli v. Iravani</u>, 625 F. Supp. 2d 276, 295 (E.D. Pa. 2009) (Noting that an improper purpose can be inferred where an action is filed without justification and "whether an alleged purpose is improper is an issue for the jury to decide.") (quoting <u>Broadwater</u>, 725 A.2d at 784; citing <u>Bannar v. Miller</u>, 701 A.2d 242, 249 (Pa. Super. Ct. 1997)); <u>Gigli v. Palisades Collection, L.L.C.</u>, 2008 U.S. Dist. LEXIS 62684, at *46-47 (M.D. Pa. Aug. 14, 2008) (Vanaskie, J.) (citing <u>Buchleitner v. Perer</u>, 794 A.2d 366, 377 (Pa. Super. Ct. 2002)); <u>but</u> <u>see</u> <u>Bobrick Corp. v. Santana Prods., Inc.</u>, 698 F. Supp. 2d 479, 492 (M.D. Pa. 2010) (Vanaskie, J.) ("The court decides the existence of probable cause . . . or improper purpose as a matter of law when the facts are not in dispute.") (citing <u>Schmidt</u>, 217 F. App'x at 155).  Consequently, U.S. Bank and Ocwen's motion to dismiss on this ground will be denied.

Based on the foregoing, Plaintiffs' Dragonetti claim has survived all challenges raised by Defendants.  Therefore, those portions of Defendants' respective motions seeking dismissal of Plaintiffs' Dragonetti claim will be denied.

      ii.   <u>UTPCPL Claim</u>

Plaintiffs also allege that Defendants violated the UTPCPL.  (Doc. 14, pp. 6-8).  According to Plaintiffs:

> US Bank, through authorized agents and employees but not
> limited to co-defendant Ocwen, and Ocwen, through authorized
> agents and employees including but not limited to co-defendant
> Udren failed to state material facts or otherwise misstated,
> misrepresented, or omitted the true facts concerning or related
> to the status of the Loan that tended to deceive and/or did in
> fact deceive plaintiffs . . . .

(Doc. 14, p. 7). Plaintiffs claim that Defendants' unfair or deceptive acts include,

but are not limited to, the following:

> (a) Represented that an accurate accounting of plaintiffs' loan
> had been made and reviewed thereafter in the course of the
> foreclosure; (b) By the filing of the underlying action
> represented that plaintiffs were in default under the terms of the
> Note and Mortgage; (c) By the filing of the underlying
> litigation represented that defendants were entitled to foreclose
> and sell plaintiffs' home at sheriff's sale without first properly
> accounting for plaintiffs' payments under the loan; (d) By the
> filing of the underlying litigation represented that the
> underlying foreclosure was lawful.

(Id.). Plaintiffs allege that "[i]t is unreasonable to conclude that a national bank

like US Bank and a national mortgage servicer like Ocwen does not intend for its

customers to rely upon its communications about their account–especially when,"

according to Plaintiffs, "the communications involve seeking to sell plaintiffs'

home as in the underlying action and the defendants collectively fail to

acknowledge or review their errors and instead simply ratify their continued

wrongful conduct as in this matter." (Id.). Plaintiffs claim that they "reasonably

relied upon the material acts and actions of defendants as exemplified by their

retaining counsel to defendant the underlying litigation."  (Doc. 14, p. 7).

Plaintiffs state that:

> [b]ut for defendants and their respective agents' and
> employees' acts and omissions and disregard for its won
> records reflecting default by plaintiffs when plaintiffs' regular
> payments were cashed by Ocwen for nearly a year after a date
> of default alleged in the underlying litigation resulting in
> conflicting and otherwise incorrect accounting of plaintiffs'
> loan, plaintiffs would not have sustained any damages and
> losses.

(Id. at p. 8).

Based on the foregoing, Plaintiffs claim that Defendants violated section

201-3 of the UTPCPL.  (Id.).  Specifically, Plaintiffs allege that Defendants

violated section 201-3 when they "engaged in fraudulent or deceptive conduct

which created a likelihood of confusion or of misunderstanding as to a default

under the terms of the Note and mortgage entitling defendants to file the

foreclosure."  (Id.) (citing 73 P.S. § 201-2(4)(xxi)).  Also, Plaintiffs allege that

Defendants violated section 201-3 of the UTPCPL when they:

> misrepresented the characteristics or benefits of the loan
> accounting of the loan rendered to plaintiffs as being inaccurate
> when the loan's servicing and accounting was defective
> resulting in false allegations of default and false legal claims of
> right to sell plaintiffs' home under the terms of the Note and
> Mortgage.

(Doc. 14, p. 8) (citing 73 P.S. § 201-2(4)(v)).

The UTPCPL is "a remedial statute intended to protect consumers from unfair or deceptive [business] practices or acts . . . ." Balderston v. Medtronic Sofamor Danek, Inc., 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001). The UTPCPL "prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,' as defined by other provisions of the statute." Mondron v. State Farm Mut. Auto. Ins. Co., 2016 U.S. Dist. LEXIS 176404, at *10 (W.D. Pa. Dec. 21, 2016) (alteration in original) (quoting 73 P.S. §§ 201-3 and 201-2(4)). Notably:

> the UTPCPL provides a private cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful."

Id. at *10-11 (quoting 73 P.S. § 201-9.2(a)). "To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate (1) 'ascertainable loss of money or property, real or personal,' [73 P.S.] § 201-9.2(a), (2) 'as a result of' the defendant's prohibited conduct under the statute." Laymark v. Bank of Am., N.A., 783 F.3d 168, 180 (3d Cir. 2015) (quoting 73 P.S. § 201-9.2(a); citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004)). Furthermore, a

plaintiff bringing a claim under the UTPCPL "' must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance . . . .'" Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (first alteration in original) (quoting Yocca, 854 A.2d at 438); see Tran v. Metro. Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005); see also Mohney v. Forney, 93 F. App'x 391, 395 (3d Cir. 2004); Post v. Liberty Mut. Grp., Inc., 2014 U.S. Dist. LEXIS 83373, at *7-8 (E.D. Pa. June 18, 2014) (quoting Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009); citing Toy v. Metro. Life Ins. Co., 863 A.2d 1, 11 (Pa. Super. Ct. 2004), aff'd, 928 A.2d 186 (Pa. 2007)); Grudkowski v. Foremost Ins. Co., 2013 U.S. Dist. LEXIS 30567, at *26-31 (M.D. Pa. Mar. 5, 2013) (Caputo, J.).

Defendants move to dismiss Plaintiffs' UTPCPL claims.[4] See (Docs. 21, 23). In particular, Udren argues that Plaintiffs have failed to plead an ascertainable loss of money or property, real or personal, and justifiable reliance, both of which are required to successfully prosecute a UTPCPL action. (Doc. 22,

---

[4] Udren also argues that Plaintiffs' claim pursuant to the Fair Credit Extension Uniformity Act ("FCEUA"), 73 PA. CON. STAT. ANN. § 2270.1 et seq., should be dismissed because it is expressly excluded from liability under the FCEUA. (Doc. 22, p. 13). Notably, however, Plaintiffs have withdrawn their FCEUA claim. See (Doc. 14, pp. 6-8); (Doc. 27-1, p. 13). Consequently, to the extent that Udren moves for dismissal of Plaintiffs' withdrawn FCEUA claim, it will be dismissed as moot.

p. 13).  As for justifiable reliance, Udren argues that:

> Plaintiffs do no assert one iota of a fact supporting justifiable reliance or specific harm therefrom, rather, they baldly claim that they were "unable to buy a new truck," they "have been forced to rent rather than purchase a new home because they cannot qualify for an affordable mortgage" their credit was damaged and they hired an attorney to defend the foreclosure action.

(Doc. 22, p. 14).  Udren claims that "[t]here is absolutely no nexus between any alleged representation of Udren and the alleged (and unascertainable) harm by Plaintiffs."  (Id.).  Therefore, Udren concludes, "Plaintiffs' claims for purported violations of the UTPCPL . . . should be dismissed."  (Id.).

Finally, Udren argues that "the economic loss doctrine precludes Plaintiffs' right to recovery under the UTPCPL, and, therefore, the FCEUA."  (Id.).  According to Udren, "[h]ere, the determination of whether Udren violated the UTPCPL turns on whether Plaintiffs, as they allege, were current under the terms of the Note and Mortgage."  (Id. at p. 15).  "Since any claims based on alleged misrepresentations are necessarily interwoven with the mortgage and note themselves," Udren concludes, "Plaintiff[s'] UTPCPL claim is barred by the economic loss doctrine."  (Id.).

U.S. Bank and Ocwen argue that there are two (2) reasons why Plaintiffs' UTPCPL claim should be dismissed.  (Doc. 24, pp. 11-14).  Specifically, U.S.

Bank and Ocwen assert that Plaintiffs' UTPCPL claim is barred by the economic loss doctrine and judicial privilege.  (Doc. 24, pp. 11-14).

Turning first to U.S. Bank and Ocwen's argument concerning the economic loss doctrine, they claim that "the determination of whether Ocwen and U.S. Bank violated the UTPCPL turns on whether [Plaintiffs], as they allege, were current under the terms of the mortgage loan, i.e., the parties' written agreement."  (Id. at p. 12).  According to U.S. Bank and Ocwen, "all of the factual allegations contained within Count III relate to the servicing of [Plaintiffs'] mortgage loan and whether their payment were appropriately accounted for under the terms of the parties' loan agreement."  (Id.).  U.S. Bank and Ocwen conclude that "[b]ecause any claims based on defendants' alleged misrepresentations regarding the mortgage loan's accounting are necessarily interwoven with the mortgage loan, the UTPCPL claim is barred by the economic loss doctrine.[footnote omitted]"  (Id. at p. 13).  Additionally, U.S. Bank and Ocwen argue that Plaintiffs' "claim of emotional distress" fails to "salvage their UTPCPL claim because such alleged damages are not compensable under the UTPCPL."  (Id. at p. 13 n.4).

U.S. Bank and Ocwen then argue that Plaintiffs' UTPCPL claim is also barred by judicial privilege.  (Id. at p. 13).  According to U.S. Bank and Ocwen, "[t]his case is no different" than Schwartz v. OneWest Bank, FSB, 614 F. App'x

80, 81-82 (3d Cir. 2015) (non-precedential), which, these Defendants contend,

resulted in the Third Circuit finding that the "UTPCPL claim, among others, was

barred by Pennsylvania's judicial privilege doctrine." (Doc. 24, p. 14).  U.S. Bank

and Ocwen claim that "[a]ll of the factual allegations relating to the UTPCPL

describe statements made by defendants in the Foreclosure Action." (Id.).  In

particular, Plaintiffs:

> allege that Ocwen and U.S. Bank violated the UTPCPL by
> "[r]epresent[ing] that an accurate account of plaintiffs' loan had
> been made and reviewed thereafter in the course of the
> foreclosure" and "[b]y the filing of underlying action
> represented that plaintiffs were in default [and] that defendants
> were entitled to foreclose [and] that the underlying foreclosure
> was lawful."

(Id.) (emphasis and alteration in original).  "As such," these U.S. Bank and Ocwen

conclude, "the allegations that underpin the UTPCPL claim are the statements and

claims made by Ocwen and/or U.S. Bank in the course of the underlying

foreclosure litigation, whether in pleadings, other court submissions, or out-of-

court discussions regarding this matter." (Id.).  Therefore, U.S. Bank and Ocwen

conclude, "[a]s the Third Circuit held in Schwartz, such statements are absolutely

privileged under Pennsylvania law, and the UTPCPL claim must fail for this

reason." (Id.).

Plaintiffs respond by first addressing Udren's argument based on justifiable

reliance.  (Doc. 27-1, p. 14).  According to Plaintiffs, they "justifiably relied on [Udren's] misrepresentations of a default in the Foreclosure Action because they hired counsel to oppose it."  (Id.).  Plaintiffs continue by asserting that they "were forced to depend upon the Foreclosure Action complaint's misrepresentation of default by paying defense counsel to file an answer in defense to prevent a default judgment that would result in loss of their home."  (Id.).  Plaintiffs claim that "such reliance was forced rather than seduced by Ocwen does not make it any less reliance or any less justified."  (Id.).  Further, Plaintiffs argue that they "otherwise clearly allege damages from such misrepresentations being the legal fees and costs paid to defend the Foreclosure Action, emotional and credit damage from therefrom."  (Id.).

Plaintiffs then address Udren's argument that they have failed to sufficiently plead ascertainable loss.  (Id.).  In particular, Plaintiffs claim that Grimes, a case cited by Udren, is distinguishable from the present circumstances.  (Id. at pp. 14-15).  In particular, Plaintiffs argue that Grimes is inapplicable because, unlike Grimes, which rejected a plaintiff's claim that legal fees incurred bringing a UTPCPL claim satisfies the ascertainable loss requirement, Plaintiffs are claiming the legal fees incurred from the underlying foreclosure action as damages.  (Id.).  Plaintiffs state that "[u]nlike Grimes, however, no facts in the instant case support

plaintiffs were spinning novel legal theories to manufacture a default of their mortgage loan to provoke a foreclosure showdown with Ocwen as a pretext to file the instant litigation." (Doc. 27-1, pp. 14-15). "Accordingly," Plaintiffs argue, "the holding of <u>Grimes</u> should be restricted to facts where a UTPCPL consumer has some meaningful choice as to manufacture of their litigation costs in an underlying action rather than the UTPCPL defendant in an underlying action manufacturing those costs by its actions leaving the consumer no choice but to incur legal costs to combat a wrong." (<u>Id.</u> at p. 15). Moreover, "[t]his formulation is otherwise consistent with the statutory language of the UTPCPL which explicitly provides that any person who suffers an ascertainable loss 'may bring a private action to recover actual damages.'" (<u>Id.</u>).

In regards to the argument that their UTPCPL claims are barred by the United States Court of Appeals' decision in <u>Werwinski v. Ford Motor Co.</u>, 286 F.3d 661, 671 (3d Cir. 2002), and the economic loss doctrine, Plaintiffs claim that Defendants' reliance "upon <u>Werwinski</u> is misplaced insofar as the Third Circuit Court of Appeals' projection of the Pennsylvania Supreme Court's decision on gist of the action/economic loss doctrine is no longer controlling given that" the Supreme Court of Pennsylvania has "issued a ruling on application of this doctrine which permits tort claims for fraudulent contract performance." (Doc. 27-1, p. 16)

(citing Bruno v. Erie Ins. Co., 106 A.3d 48 (Pa. 2014)).

"In Bruno," Plaintiffs state, "homeowner insureds sued their insurer, Erie

Insurance Company, for negligently performing under the applicable homeowners'

insurance policy covering mold remediation expenses." (Doc. 27-1, p. 16). "Erie

had informed the plaintiffs that the suspected mold was harmless, causing

plaintiffs to continue residing in the home during renovations until the mold later

proved toxic, causing plaintiffs significant respiratory illness including throat

cancer." (Id.). According to Plaintiffs, "[t]he relevant issue on appeal was

whether the Brunos' negligence claim, based on Erie's representation that the

mold was harmless, was barred by the gist of the action doctrine." (Id.). Plaintiff

continues by noting that the Supreme Court of Pennsylvania "conceded that Erie

was under a contractual obligation to investigate the alleged mold . . . ." (Id.).

However, the Supreme Court of Pennsylvania:

> held that the gist of the action doctrine did not apply because
> Erie acted negligently in fulfilling its contractual obligations,
> and this negligence "concerns Erie's alleged breach of a
> general social duty, not a breach of any duty created by the
> insurance policy itself."

(Id. at pp. 16-17). Plaintiffs contend that "[t]his represents a break with the

[Pennsylvania] Superior Court's holding in eToll, Inc. v. Elias/Savion Adver.,

Inc., 811 A.2d 10 (Pa. Super. 2002) which rejected eToll's argument that 'the duty

to refrain from deliberate deceit is a duty implied by law, not derived from a

private contract.'" (Doc. 27-1, p. 17). Plaintiffs claim that:

> Bruno recognizes that, while a contract establishes a
> relationship between parties, it does not provide an exhaustive
> basis for the source of duties owed by the parties, and that a
> contractual relationship does not necessarily preclude the
> existence of extra-contractual duties that may be imposed by
> common law or statute.

(Id.).

Turning to this matter, Plaintiffs contend that the economic loss doctrine

should not apply here because "Ocwen, and Udren, in its capacity as the agent of

Ocwen had a duty to avoid unfair and deceptive practices in the latter's

performance of services under the mortgage contract with plaintiffs." (Id.). As to

the impact of judicial privilege on the viability of their UTPCPL claim, Plaintiffs

argue that the Court should not follow the United States Court of Appeals for the

Third Circuit's decision in Schwartz. (Id. at pp. 17-18). The Court will address

the issues of justifiable reliance and judicial privilege in turn.[5]

---

[5] As discussed in more detail below, since justifiable reliance and judicial
privilege are dispositive, the Court will not render a decision on the Defendants'
respective arguments concerning the application of the economic loss doctrine to
this case or Udren's argument that Plaintiffs failed to sufficiently plead
ascertainable loss.

a.    <u>Justifiable Reliance</u>

As stated, Udren notes that "[i]n order to proceed under the UTPCPL's private right of action, a plaintiff must plead that he or she 'suffer[ed]' and 'ascertainable loss of money or property, real or personal," (Doc. 22, p. 13) (quoting 73 P.S. § 201-9.2(a)).  Additionally, Udren also correctly notes that for Plaintiffs to defeat the instant motion to dismiss as to their UTPCPL claims they must sufficiently plead "justifiable reliance under the statute to satisfy this stringent causation requirement."  (<u>Id.</u>) (citing <u>Yocca</u>, 854 A.2d at 438); <u>see</u> <u>Hunt</u>, 538 F.3d at 221; <u>Glover v. Wells Fargo Home Mortg.</u>, 629 F. App'x 331, 344 (3d Cir. 2015) ("'To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.'") (quoting <u>Yocca</u>, 854 A.2d at 438).  Udren argues that Plaintiffs' UTPCPL claims should be dismissed because, <u>inter</u> <u>alia</u>, they failed to plead ascertainable loss and justifiable reliance.  (<u>Id.</u> at pp. 13-14).  According to Udren, "[j]ustifiable reliance is conspicuously absent from the Complaint."  (<u>Id.</u>).  Udren continues by stating that:

> Plaintiffs do not assert one iota of a fact supporting justifiable reliance or specific harm therefrom, rather, they baldly claim that they were "unable to buy a new truck," they "have been forced to rent rather than purchase a new home because they cannot qualify for an affordable mortgage" their credit was

> damaged and they hired an attorney to defend the foreclosure
> action.

(Doc. 22, pp. 13-14).  According to Udren, "[t]here is absolutely no nexus between

any alleged representation of Udren and the alleged (and unascertainable) harm by

Plaintiffs."  (Id.).  As a result, Udren argues, Plaintiffs' UTPCPL claims should be

dismissed.

 A review of the amended complaint reveals that Plaintiffs have failed to

sufficiently plead that they justifiably relied on a miscommunication or deceptive

communication to their detriment.  Rather, the basis of Plaintiffs' UTPCPL claim

hinges on the fact that they did not rely on the alleged misrepresentations of

Udren.  Rather, according to Plaintiff, they "reasonably relied upon the material

acts and actions of defendants as exemplified by their retaining counsel to defend

the underlying litigation."  (Doc. 14, p. 7).  Plaintiffs further allege that:

> But for defendants and their respective agents' and employees'
> acts and omissions and disregard for its own records reflecting
> default by plaintiffs when plaintiffs' regular payments were
> cashed by Ocwen for nearly a year after a date of default
> alleged in the underlying litigation resulting in conflicting and
> otherwise incorrect accounting of plaintiffs' loan, plaintiffs
> would not have sustained any damages and losses.

(Id. at p. 8).  As these allegations show, Plaintiffs do not allege that they ever

thought the communications relevant to their UTPCPL claims were accurate.

Instead, as stated, this matter is centered on Plaintiffs' alleged unwillingness to

believe the allegations advanced by the Defendants in the underlying mortgage

foreclosure case.  See Warren v. Wells Fargo Bank, N.A., 2016 U.S. Dist. LEXIS

21253, at *9-10 (W.D. Pa. Feb. 22, 2016); Williams v. EMC Mortg. Corp., 2013

U.S. Dist. LEXIS 63426, at *17 (E.D. Pa. May 3, 2013) ("The plaintiff claims he

kept trying to make his regular mortgage payments even after the alleged

misrepresentations so it appears he did not rely on the alleged misrepresentations

in a way that altered his behavior.").  Importantly, "'[w]hether reliance on an

alleged misrepresentation is justified depends on whether the recipient knew or

should have known that the information supplied was false.'"  Davis v. Bank of

Am., N.A., 2016 U.S. Dist. LEXIS 13333, at *13-14 (E.D. Pa. Feb. 3, 2016)

(alteration in original) (quoting Porreco v. Porreco, 571 Pa. 61, 811 A.2d 566 (Pa.

2002)).  "A plaintiff 'is not justified in relying upon the truth of an allegedly

fraudulent misrepresentation if he knows it to be false or if its falsity is obvious.'"

Davis, 2016 U.S. Dist. LEXIS 13333, at *14 (quoting Toy v. Metro Life Ins. Co.,

928 A.2d 186, 201 (Pa. 2007)).

     Here, Plaintiffs allege that "[e]ven after the complaint in foreclosure was

filed, and Plaintiffs continually informed Defendants of their mistake, Defendants

pursued their meritless claim." (Doc. 14, p. 4).  This theory is continued by

Plaintiffs in their brief in opposition to the motions to dismiss at bar.  According to

Plaintiffs, "[t]hey did not rely upon the truth of the Foreclosure Action's

misrepresentations as one dictionary definition of 'rely' would permit, i.e. to

'place confidence in' and act accordingly." (Doc. 27-1, p. 14).  Thus, based upon

the facts alleged in their amended complaint, Plaintiffs have failed to sufficiently

allege that they justifiably relied on the communications relevant to their UTPCPL

claims.  As a result, Plaintiffs' UTPCPL claims against Udren will be dismissed.

Clearly, based upon the facts alleged in the amended complaint, no set of

facts can be alleged under these circumstances which would allow Plaintiffs to

obtain relief against Udren under the UTPCPL.  Specifically, Plaintiffs will be

unable to sufficiently plead that they justifiably relied on the communications

relevant to their UTPCPL claims against Udren to establish that they are entitled

to relief for those claims.  As a result, amendment will not be allowed as to these

claims because any such amendment would be futile.  Therefore, Plaintiffs'

UTPCPL claims against Udren will be dismissed with prejudice.

b.      Judicial Privilege

To the extent that U.S. Bank and Ocwen argue that Plaintiffs' UTPCPL

claims should be dismissed because they are barred by Pennsylvania's judicial

privilege doctrine, (Doc. 24, pp. 2, 13-14), their motion will be granted.  As stated,

U.S. Bank and Ocwen argue that "[t]his case is no different" than <u>Schwartz v.</u>
<u>OneWest Bank, FSB</u>, 614 F. App'x 80, 81-82 (3d Cir. 2015) (non-precedential),
which resulted in the Third Circuit finding that the "UTPCPL claim, among
others, was barred by Pennsylvania's judicial privilege doctrine."  (Doc. 24, p. 14).
U.S. Bank and Ocwen claim that "[a]ll of the factual allegations relating to the
UTPCPL describe statements made by defendants in the Foreclosure Action."
(<u>Id.</u>).  In particular, Plaintiffs "allege that Ocwen and U.S. Bank violated the
UTPCPL by '[r]epresent[ing] that an accurate account of plaintiffs' loan had been
made and reviewed thereafter <u>in the course of the foreclosure</u>' and '[<u>b]y the filing</u>
<u>of underlying action</u> represented that plaintiffs were in default [and] that
defendants were entitled to foreclose [and] that the underlying foreclosure was
lawful.'"  (<u>Id.</u>) (emphasis and alteration in original).  "As such," U.S. Bank and
Ocwen conclude, "the allegations that underpin the UTPCPL claim are the
statements and claims made by Ocwen and/or U.S. Bank in the course of the
underlying foreclosure litigation, whether in pleadings, other court submissions, or
out-of-court discussions regarding this matter."  (<u>Id.</u>).

In response, Plaintiffs claim that "[t]he jurisprudence of the Third Circuit in
<u>Schwartz</u> is clearly unsound and should not be followed."  (Doc. 27-1, p. 17).
According to Plaintiffs, "[l]itigation privilege, a doctrine based in common law,

does not overcome statutory directives of the legislature." (Doc. 27-1, p. 17).

"Hence," Plaintiffs continue, "1 Pa. Code § 1504 holds that a statutory remedy is always preferred over common law . . . ."[6] (Id.). Plaintiffs contend that "[t]he Third Circuit in <u>Schwartz</u> based its holding barring UTPCPL claims upon four (4) case decisions involving a litigation privilege bar to only common law claims." (Id.). Specifically, Plaintiffs state that "General Refractories Company involved claims of Abuse of Process, for which the appeals court reversed and remanded for amendment of the complaint, and barred the common law conspiracy claim." (Id. at pp. 17-18). Plaintiffs continue by stating that the Pennsylvania Superior Court "cases of <u>Binder v. Triangle Publ'ns, Inc.</u> and <u>Richmond v. McHale</u>, involved common law claims of defamation that were barred by the privilege." (Id. at p. 18). "After discussing these cases," Plaintiffs contend, the Third Circuit in <u>Schwartz</u> went "on to make this erroneous broad brush conclusion of law to bring non-defamation claims under the litigation privilege." (Id.).

---

[6] As quoted by Plaintiffs, section 1504 states:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 PA. CONS. STAT. ANN. § 1504; (Doc. 27-1, p. 17).

Plaintiffs also take issue with the Third Circuit's reliance on <u>Moses v.</u>

<u>McWilliams</u>, 549 A.2d 950 (1988).  (Doc. 27-1, p. 18).  On this point, Plaintiffs

quote the <u>Schwartz</u> decision for the following:

> Although the judicial privilege most often bars defamation
> suits, Pennsylvania courts have applied the privilege broadly to
> confer "immunity from civil liability in the context of judicial
> proceedings."

(<u>Id.</u>).  "However," Plaintiffs argue, "the <u>Moses</u> Court was holding nothing of this

kind.  Indeed, while the Moses holding did apply judicial immunity to constrain a

statutory right[footnote omitted], it did so in the factual/legal context of a

defamation claim."  (<u>Id.</u>) (citing <u>Moses</u>, 549 A.2d 950).

In <u>Schwartz</u>, a plaintiff "brought Pennsylvania state law claims against" the

defendant, which included, <u>inter alia</u>, a claim under the UTPCPL.  <u>Schwartz</u>, 614

F. App'x at 81.  The plaintiff's UTPCPL claim in <u>Schwartz</u> was "based on

statements [the defendant] made in connection with foreclosure proceedings on

[the plaintiff's] property."  <u>Id.</u>  "The District Court dismissed [the plaintiff's]

claims, holding that [the defendant's] statements were protected by Pennsylvania's

absolute judicial privilege and that [the plaintiff's] abuse of process claim was

inadequately pled."  <u>Id.</u>  The Third Circuit noted that:

> all of [the plaintiff's] claims arise from the foreclosure action
> and communications that occurred in connection with that

66

> action, namely the foreclosure complaint, the related sale
> notices posted as a result of the state court judgment in the
> foreclosure action, <u>see</u> PA. R. CIV. P. 3129.1, and
> communications between [the defendant's] and [the plaintiff's]
> attorneys that directly pertained to the foreclosure action.

<u>Schwartz</u>, 614 F. App'x at 83.  In addressing the District Court's "dismissal of all claims but the abuse of process claim on the ground that they depended on communications protected by Pennsylvania's judicial privilege," the Third Circuit found that "[t]hese communications reflected counsel's efforts to share their clients' litigation positions regarding [the defendant's] assertion that the mortgage covered both parcels, and thus were 'pertinent and material to the redress or relief sought' in the foreclosure case."  <u>Id.</u> at 81 (quoting <u>Post v. Mendel</u>, 507 A.2d 351, 355 (Pa. 1986); citing <u>Richmond v. McHale</u>, 35 A.3d 779, 784, 786 (Pa. Super. Ct. 2012)).  "Thus," the Third Circuit determined, "we will affirm the District Court's dismissal of all claims, other than the abuse of process claim, on the ground that the allegedly improper communications that form the basis for these claims are protected by the judicial privilege.[footnote omitted]"  <u>Id.</u>

Here, Plaintiff alleges that the UTPCPL was violated when Defendants:

> failed to state material facts or otherwise misstated,
> misrepresented, or omitted the true facts concerning or related
> to the status of the Loan that tended to deceive and/or did in
> fact deceive plaintiffs as described herein including but not
> limited to: (a) Represented that an accurate accounting of

> plaintiffs' loan had been made and reviewed thereafter in the course of the foreclosure; (b) By the filing of the underlying action represented that plaintiffs were in default under the terms of the Note and Mortgage; (c) By the filing of the underlying litigation represented that defendants were entitled to foreclose and sell plaintiffs' home at sheriff's sale without first properly accounting for plaintiffs' payments under the loan; (d) By the filing of the underlying litigation represented that the underlying foreclosure was lawful.

(Doc. 14, p. 7).  Plaintiffs continue by claiming that "[i]t is not unreasonable to conclude that a national bank like US Bank and a national mortgage servicer like Ocwen does not intend for its customers to rely upon its communications about their account . . . ."  (Id.).  "[E]specially," Plaintiffs continue, "when the communications involve seeking to sell plaintiffs' home as in the underlying action and the defendants collectively fail to acknowledge or review their errors and instead simply ratify their continued wrongful conduct as in this matter."  (Id.).  According to Plaintiffs, they "reasonably replied upon the material acts and actions of defendants as exemplified by their retaining counsel to defend the underlying litigation."  (Id.).  Further, Plaintiffs allege that "[b]ut for" Defendants':

> acts and omissions and disregard for its own records reflecting default by plaintiffs when plaintiffs' regular payments were cashed by Ocwen for nearly a year after a date of default alleged in the underlying litigation resulting in conflicting and otherwise incorrect accounting of plaintiffs' loan, plaintiffs

would not have sustained any damages and losses.

(Doc. 14, p. 8).

However, following the Third Circuit's persuasive decision in <u>Schwartz</u>, it is determined that Plaintiffs' UTPCPL claim against U.S. Bank and Ocwen will be dismissed on the ground that it depends on communications protected by Pennsylvania's judicial privilege.  As was the case in <u>Schwartz</u>, the communications at issue in Plaintiffs' UTPCPL claim concern the arguments advanced in favor of obtaining a mortgage foreclosure judgment.  <u>See</u> (<u>Id.</u> at pp. 7-8).  Therefore, such communications were pertinent and material to the redress or relief sought in that foreclosure action.  As a result, following the Third Circuit's well reasoned decision in <u>Schwartz</u>, the Court will dismiss Plaintiffs' UTPCPL claims against U.S. Bank and Ocwen under Pennsylvania's judicial privilege doctrine.

Further, since it is determined that judicial privilege applies to and bars Plaintiffs' UTPCPL claims against U.S. Bank and Ocwen concerning communications made during the course of a judicial proceeding, and there being no indication that Plaintiffs are seeking relief under the UTPCPL for communications made beyond  the course of a judicial proceeding, <u>see</u> (Doc. 14, p. 7), leave to amend these claims will not be allowed because such amendment

would be futile.  As a result, Plaintiffs' UTPCPL claims against U.S. Bank and

Ocwen will be dismissed with prejudice.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Defendants' respective motions to dismiss

Plaintiffs' FDCPA claims concerning Plaintiffs' underlying mortgage foreclosure

action will be granted.  As a result, Plaintiffs' FDCPA claims concerning their

underlying mortgage foreclosure action, <u>see</u> (Doc. 14, pp. 5-6), will be dismissed

because they are barred by the FDCPA's statute of limitations.  As for Defendants'

respective motions to dismiss Plaintiffs' state law claims, those motions will be

denied in part and granted in part.  In particular, Defendants' respective motions to

dismiss Plaintiffs' Dragonetti claims will be denied.  However, Defendants'

respective motions to dismiss Plaintiffs' UTPCPL claims will be granted and, thus,

those claims will be dismissed.  Lastly. Plaintiffs' FDCPA and UTPCPL claims

will be dismissed with prejudice because granting leave to amend those claims

would be futile.

An appropriate Order follows.

/s/ William J. Nealon
**United States District Judge**