**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER BAINBRIDGE & KELLY BAINBRIDGE, INDIVID. & AS H/W, | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | : Civil Action No. 16-CV-00411 (WJN) <br> : |
| U.S. BANK, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6, et al., | : <br> : <br> : <br> : |
| Defendants. | : |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' COMBINED MOTION AND MEMORANDUM TO AMEND COMPLAINT**

**I.      INTRODUCTION**

Plaintiffs Christopher and Kelly Bainbridge ("the Bainbridges") seek leave to file a proposed Second Amended Complaint (the "SAC"), which adds two legal theories against all defendants: (1) negligence and (2) negligent infliction of emotional distress. The facts alleged in the SAC remain the same as before. Defendants U.S. Bank, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6 ("U.S. Bank") and Ocwen Loan Servicing, LLC ("Ocwen") oppose amendment because each of the new causes of action is subject to dismissal under Rule 12(b)(6) and therefore amendment would be futile. Specifically, the negligence claim is barred by both (1) the economic loss rule and (2) the gist of the action doctrine. The Bainbridges premise their negligence claim entirely on a purported duty that arose out of the parties' contractual relationship, *i.e.*, the alleged failure of U.S. Bank and Ocwen to account for their monthly mortgage payments properly. This claim is inextricably intertwined with the contractual relationship between the parties, and no tort claim may proceed on that basis.

As for the negligent infliction of emotional distress claim, in order to maintain such a claim, plaintiffs typically must allege (1) a physical impact caused by defendant, (2) their presence in the zone of danger of physical injury, or (3) that they witnessed a serious injury to a close relative caused by defendant. Of course, none of the events giving rise to this action fits within those categories. Thus, the Bainbridges appear to be relying on a developing fourth category of negligent infliction of emotional distress claim based on a fiduciary or contractual relationship between plaintiff and defendant. When faced with the question of whether such a claim could exist in the absence of a physical injury, the Pennsylvania Supreme Court split evenly. *Toney v. Chester Cnty. Hosp,* 36 A.3d 83, 84 (Pa. 2011). But, assuming *arguendo* that such a claim is recognized under Pennsylvania law, the three justices who articulated it in *Toney* made it extremely narrow, and under their formulation, it applies only when the defendant has a duty of care for plaintiff's emotional well-being. In the mortgage and loan servicing context, trial courts have uniformly rejected the contention that the commercial and (sometimes) adverse relationship between banks / loan servicers and their customers can give rise to a duty to care for the borrowers' emotional well-being. For these reasons, more fully explained below, U.S. Bank and Ocwen respectfully request that the Court deny leave to amend.

## II.    PROCEDURAL HISTORY

The Bainbridges commenced this action on March 8, 2016, naming U.S. Bank, Ocwen, and Udren Law Offices ("Udren") as defendants. (Dkt. No. 1). The complaint sought relief under the Fair Debt Collection Practices Act ("FDCPA") (Count I), the Dragonetti Act (Count II), the Fair Credit Extension Uniformity Act ("FCEUA"), and the UTPCPL (Count III). After the Bainbridges filed a first amended complaint (Dkt. No. 14), which amended some factual allegations and dropped the FCEUA claim, all defendants moved to dismiss the first amended

complaint. (Dkt. Nos. 21–24). In March 2017, the Court granted Defendants' motions to dismiss in part, and denied them in part. (Dkt. No. 37). Specifically, the Court dismissed the FDCPA claim as to the underlying foreclosure action, and dismissed the UTPCPL claim in its entirety. (*Id.*). Thus, after the Court ruled, the case was, at its heart, a malicious prosecution case under the Dragonetti Act. (*Id.*). Now the Bainbridges seek to add two counts in the proposed SAC, negligence and negligent infliction of emotional distress. (Dkt. Nos. 44–45).[1]

## III.  STATEMENT OF FACTS

On March 28, 2007, the Bainbridges signed a mortgage loan for property in Hawley, Pennsylvania. (SAC, ¶¶ 7–8). On November 4, 2010, the Bainbridges filed a Chapter 13 Petition in the United States Bankruptcy Court for the Middle District of Pennsylvania at No. 10-09019 (the "Bankruptcy Action"). (SAC, ¶ 9). On October 12, 2011, Ocwen filed a Transfer of Claim showing that the servicing rights on the Bainbridges' mortgage loan had been reassigned to it. (SAC, ¶ 10).

On July 18, 2013, U.S. Bank filed a Motion for Relief from Automatic Stay ("MFR") based on the Bainbridges' alleged failure to maintain post-petition monthly mortgage payments. (SAC, ¶ 11). The Bainbridges, who were represented by counsel in the Bankruptcy Action, did not oppose the MFR, and Judge Robert N. Opel, II entered an order granting U.S. Bank relief from the automatic stay, allowing it to proceed with a mortgage foreclosure action (SAC, ¶ 12). On June 26, 2014, U.S. Bank, c/o Ocwen, commenced a mortgage foreclosure action (the "Foreclosure Action") in the Court of Common Pleas for Wayne County, Pennsylvania. (SAC, ¶

---

[1] When the Bainbridges initially moved for leave to file the SAC, they still included the dismissed FDCPA and UTPCPL claims in the text of their proposed pleading. (Dkt. No. 44-2). After being notified of this error by defense counsel, they amended their proposed SAC to exclude the FDCPA and UTPCPL claims against all defendants. (Dkt. No. 45-1). U.S. Bank and Ocwen do not object to the exclusion of the FDCPA and UTPCPL claims in the proposed SAC.

13). On March 13, 2015, following a brief bench trial, President Judge Raymond L. Hamill entered a verdict for the Bainbridges and against U.S. Bank. (SAC, ¶ 19). The Bainbridges claim that they did not miss any mortgage payments after Judge Opel allowed U.S. Bank to foreclose, and because of that, the foreclosure was wrongly initiated. (SAC, ¶ 16). As a result of the Foreclosure Action, the Bainbridges claim that their credit has been damaged and that they had to hire attorneys to defend the underlying action. (SAC, ¶ 23).[2]

Under these facts, the proposed SAC brings three claims against Defendants: Count I under the Dragonetti Act, Count II for Negligence, and Count III for Negligent Infliction of Emotional Distress. (Dkt. No. 45-1).

IV.     **STATEMENT OF QUESTIONS INVOLVED**

> *Question No. 1*: Whether amendment to add a negligence claim against U.S. Bank and Ocwen would be futile because the gist of the action and economic loss doctrines bar a negligence action under the facts alleged?
>
> *Suggested Answer*: Yes.
>
> *Question No. 2*: Whether amendment to add a negligent infliction of emotional distress claim would be futile because U.S. Bank and Ocwen did not assume responsibility for the Banbridges'?
>
> *Suggested Answer*: Yes.

V.      **ARGUMENT**

   A.     **Proposed Amendments Subject to Dismissal on Legal Grounds Are Futile and Impermissible.**

Where, as here, plaintiffs seek to amend their complaint more than 21 days after service of a responsive pleading, and the opposing parties do not consent to the amendment, a plaintiff must obtain leave of court to amend its complaint. Fed. R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." *In re Burlington Coat*

---

[2] To the extent the Bainbridges allege damages to credit, any such claims would be preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1681t(b)(1)(F).

*Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Grounds that justify denial include "undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. A proposed amendment is futile when it would not withstand a Rule 12(b)(6) motion. *Id.*

Dismissal under Rule 12(b)(6) is required whenever plaintiffs fail to allege sufficient facts in support of a claim that would entitle them to relief, or where a matter can be disposed of as a matter of law based on facts in the complaint or documents attached to it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-66 (2007). Under *Iqbal* and *Twombly*, the Supreme Court confirmed that a complaint must contain specific factual allegations showing that the plaintiff is entitled to the relief he or she seeks. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 562–66. The Court is not required to accept inferences that are not supported by the well-pleaded facts of the complaint. *Twombly*, 550 U.S. at 562–66 (the plaintiff must plead sufficient "factual content" to support the inference that the defendant is liable); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[The] District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."). A "complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its [well-pled] facts." *Fowler*, 578 F.3d at 211. To pass muster under federal pleading rules, courts "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." *Twombly,* 550 U.S. at 555. Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the 'pleader is entitled to relief.'" *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.

2009) (quoting *Iqbal* and Fed. R. Civ. P. 8(a) (2)); *Iqbal*, 556 U.S. at 678 ("[n]aked assertion[s] devoid of 'further factual enhancement'" do not suffice).

Dismissal with prejudice is required where plaintiffs plead facts affirmatively showing that it is not entitled to relief. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground."); *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing cases holding, *inter alia*, dismissal is "appropriate when 'the plaintiff effectively pleads herself out of court' by alleging facts that establish [a] defense"); *Gagliardi v. Clark*, No. CIV A 06-20, 2006 WL 2847409, at *4 (W.D. Pa. Sept. 28, 2006) ("[W]here the plaintiff 'chooses to plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court."); WRIGHT & MILLER, 5B FEDERAL PRACTICE & PROCEDURE § 1357, at n.59 (3d ed. 2014) (same).

**B.      The Gist of the Action and Economic Loss Doctrines Would Bar the Negligence Claim Against U.S. Bank and Ocwen.**

The Bainbridges' proposed negligence claim is barred by the economic loss and the gist of the action doctrines. The economic loss doctrine bars causes of action in tort where plaintiffs seek solely economic damages "unaccompanied by physical or property damage." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 487 (E.D. Pa. 2016) (citing *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) (quoting *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 305 (Pa. Super. Ct. 2003)).

Similarly, the gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims." *Kelly v. Wells Fargo Bank, N.A.*, 2014 WL 3394737, at *5 (M.D. Pa. July 20, 2014) (quoting *The Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 927 (Pa. Super. Ct. 2004)). "As a practical matter, the doctrine precludes

plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). Even in the absence of a breach of contract claim directly pleaded by plaintiffs, the gist of the action doctrine precludes a tort claim where the duties allegedly breached are intertwined with contractual obligations. *Kelly*, 2014 WL 3394737, at \*5 (citing *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 552–55 (M.D. Pa. 2010)).

Both doctrines apply here to bar the proposed negligence claim. As to the economic loss doctrine, the Bainbridges have not alleged any physical or property damage, and their negligence claim is closely related to the parties' contractual relationship, *i.e.*, that of mortgagor and mortgagee. The entire basis for the negligence claim is that U.S. Bank and Ocwen allegedly breach their duties to the Bainbridges by failing to properly account for and apply their mortgage payments. (SAC, ¶¶ 16, 54–56). Because the Bainbridges' proposed negligence claim seeks to recover solely for economic losses and they have not alleged any physical or property damage, the proposed negligence claim would be barred by the economic loss rule.

The gist of the action doctrine would likewise bar the negligence claim. Where a borrower brings an action against a mortgagee for wrongful foreclosure, his lawsuit "arises out of, and is wholly dependent upon, the terms of the mortgage agreement and related document mutually entered into by the parties. It follows then that the parties' dispute is defined by their contractual obligations in this regard." *Kelly*, 2014 WL 3394737, at \*6. Tort claims for wrongful foreclosure are, thus, barred by the gist of the action doctrine:

> In this case, the Kellys' wrongful foreclosure and fraud claims stem from Wells Fargo's alleged failure to properly credit their monthly principal and interest payments in accordance with the parties' agreement, statements Wells Fargo made about such payments, and Wells Fargo foreclosure proceedings. In support of these claims, the Kellys attach to their complaint documents that they allege evidence the terms of the parties' agreement, including the alleged original

agreement between the parties indicating that Mr. Kelly was not required to purchase flood insurance or make payments of taxes and insurance into an escrow account. The Kellys' allegations, as well as the documents attached to their complaint, demonstrate that Wells Fargo's obligation to credit the payments to principal and interest, instead of applying such payments to an escrow account, arises out of, and is wholly dependent upon, the terms of the mortgage agreement and related documents mutually entered into by the parties. It follows then that the parties' dispute is defined by their contractual obligations in this regard.

*Id.*

The same reasoning compels dismissal of the proposed negligence claim. Like the Kellys, the Bainbridges incorporate into their proposed SAC the "mortgage loan" they initiated in 2007. (SAC, ¶ 8). That loan dictates the terms of the parties' relationship. (*Id.*). Indeed, the entire basis of their negligence claim is that U.S. Bank and Ocwen owed them a "duty of care" to properly credit their monthly payments. (SAC, ¶ 54) (alleging that defendants owed plaintiffs a duty to "accurate[ly] account[ for] the borrower's mortgage loan payments."). Of course, U.S. Bank and Ocwen would have had no such obligation absent the contractual relationship between the parties. Further, the breach element of the Bainbridges' negligence claim is predicated upon defendants' alleged wrongful foreclosure, *i.e.*, their alleged failure to perform their contractual duty of accurately accounting for the Bainbridges' monthly mortgage payments. (SAC, ¶ 55) (alleging that the foreclosure action breached defendants' duty of care). It, thus, follows that the negligence claim "is defined by [the parties'] contractual obligations", and must be dismissed under the gist of the action doctrine as well.

C.      **Plaintiffs Cannot State a Claim for Negligent Infliction of Emotional Distress Because Banks and Loan Servicers Are Not Responsible for Their Borrowers' Emotional Well-Being.**

"[C]laims like those made [] for negligent infliction of emotional distress arising out of a bank's handling of a delinquent mortgage are often dismissed by courts, particularly when those claims are set forth in a conclusory manner like the allegations made by the plaintiffs here."

*Angino v. Wells Fargo Bank, N.A.*, 2016 WL 787652, at \*14 (M.D. Pa. Feb, 19, 2106) (citing

*Francis v. TD Bank, N.A.*, 2013 WL 4675398, at \*6 (D.N.J. Aug. 30, 2013) *aff'd*, 597 F. App'x

58 (3d Cir. 2014) and *aff'd*, 597 F. App'x 58 (3d Cir. 2014); *Clay v. Option One Mortgage

Corp.*, 2007 WL 2728972, at \*5 (E.D. Pa. Sept. 18, 2007)). In Pennsylvania, plaintiffs alleging a

negligent infliction of emotion distress theory must prove one of four elements: (1) that they

suffered a physical impact as the result of defendant's negligence; (2) that they were in a "zone

of danger" and at risk of an immediate physical injury; or (3) that they had a contemporaneous

perception of tortious injury to a close relative; or (4) that defendant had a contractual or

fiduciary duty toward plaintiffs. See *Brown v. Phila. Coll. of Osteopathic Med.*, 74 A.2d 1130

(Pa. Super. Ct. 1996); *see also Toney v. Chester Cnty. Hosp,* 36 A.3d 83, 84 (Pa. 2011).

This case does not fall within any of the first three types of negligent infliction of

emotional distress claims recognized by Pennsylvania courts. Plaintiffs have not alleged that they

suffered a "physical impact" as the result of defendants' conduct. This case arises out of a

mortgage contract and a foreclosure action that the Bainbridges allege was unwarranted under

the circumstances. (SAC, ¶¶ 7–19). They do not allege—nor could they—that any of the

Defendants physically impacted them. Similar reasoning rules out the second type of negligent

infliction of emotional distress claim, the zone of danger claim. Under this theory, Pennsylvania

law may "provide[] compensation to those who did not actually suffer a physical impact

resulting in emotional distress so long as they were in personal danger of the physical impact."

*Toney*, 36 A.3d at 88 (citing *Niederman v. Brodsky*, 261 A.2d 84 (Pa. 1970)). This rule applies in

cases where a plaintiff is almost physically injured in an accident—for example, if a car almost

strikes a pedestrian in a cross walk. *Id.* Again, the Bainbridges plead nothing remotely like those

circumstances here. This case is about mortgage payments, not a near miss accident. The third

type of negligent infliction of emotional distress claim is the bystander claim, where plaintiff sees a close relative sustain a serious injury in an accident even though plaintiff himself is not within the zone of danger. *Toney* 36 A.3d at 88 (citing *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (Pa. 1979)). Again, the Bainbridges are not alleging that they witnessed a close relative be seriously injured physically by U.S. Bank or Ocwen.

Thus, only liability based upon a theory of a fiduciary or contractual relationship might possibly support a claim. *Arndt v. Wells Fargo Bank, N.A.*, 2015 WL 2395484, at *5 (E.D. Pa. May 20, 2015) (rejecting negligent infliction of emotional distress claim in claims arising out of allegedly wrongful mortgage foreclosures). In *Toney*, the lead Pennsylvania Supreme Court case on the issue, the justices were evenly divided on the question of whether Pennsylvania law even recognizes such a claim, with three justices finding that negligent infliction of emotional distress claims cannot succeed in the absence of a physical impact, and the three other justices permitting an exception to physical impact requirement under certain narrow circumstances. 36 A.3d at 84.[3]

In *Toney*, the Supreme Court faced a tragic set of facts where an obstetrician informed his patient (an expecting mother) that her unborn child was medically normal. *Id.* at 85. But the child was born with several serious birth defects, and the mother claimed extreme emotional harm as a result of the shock of birthing a deformed child when she expected a normal one. *Id.* The three justices who found in favor of the *Toney* plaintiff left it to future trial judges to determine which type of contractual relationship would lend itself to this sort of claim, *id.* at 95, but they did offer clear limiting principles, which are important here: "NIED is not available in ***garden-variety 'breach of contractual or fiduciary duty' cases***, but only in those cases where there exists a

_____

[3] Defendants do not contend that Justice Baer's opinion in *Toney* constitutes Pennsylvania law. Defendants cite it solely to demonstrate that, even if Justice Baer's more expansive view of the contours of a negligent infliction of emotional distress claim were the law, the Bainbridges still cannot state a claim upon which relief can be granted.

special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm *so extreme* that a reasonable person should not be expected to endure the resulting distress." *Id.* (emphasis added). Liability for negligent infliction of emotional distress claims derived from a contractual or fiduciary duty should be limited "to preexisting relationships involving duties that *obviously and objectively hold the potential of deep emotional harm* in the event of breach.... [T]he special relationships must encompass an *implied duty to care for the plaintiff's emotional well-being*." *Id.* at 95 (emphasis added).

Banks and loan servicers are *not* responsible, impliedly or expressly, for their customers' emotional well-being, and thus no negligent infliction of emotional distress claim lies here. *Arndt*, 2015 WL 2395484, at *6 ("In viewing the Complaint in the light most favorable to Plaintiff, even if she has alleged sufficient facts to support an inference of a duty, it does not rise to the level of an implied duty to care for her emotional well-being."). Even though this case "involves [the Bainbridges'] home" the relationship between them and U.S. Bank and Ocwen "was commercial and adversarial." *Id.* In other words, this is exactly the type of "garden-variety breach of contractual or fiduciary duty," that Justice Baer mentioned in cautioning against the expansion of this quite narrow form of negligent infliction of emotional distress cause of action. *Id. See also Hawkins v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 272082, at *4 (E.D. Pa. Jan. 23, 2014) (rejecting negligent infliction of emotional distress claim that defendant mortgagee bank and loan servicing company were responsible for the emotional well-being of plaintiff homeowner / mortgagor). Thus, the Bainbridges cannot state a claim for negligent infliction of emotional distress.

## VI.    CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for leave to amend the complaint be denied.

Dated: August 8, 2017                              Respectfully submitted,

**GREENBERG TRAURIG, LLP**

/s/ Gregory T. Sturges
Brian T. Feeney
Gregory T. Sturges
2700 Two Commerce Square, 2001 Market St.
Philadelphia, PA 19103
Tel (215) 988.7800
Fax (215) 988.7801
feeneyb@gtlaw.com
sturgesg@gtlaw.com

***Attorneys for Defendants U.S. Bank, N.A., as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6 and Ocwen Loan Servicing, LLC***

## CERTIFICATE OF SERVICE

I, Gregory T. Sturges, hereby certify that on the 8th day of August 2017, I caused a true and correct copy of the foregoing Defendants' Memorandum in Opposition to Plaintiffs' Combined Motion and Memorandum to Amend Complaint to be served via this Court's electronic filing service on all counsel of record.


/s/ Gregory T. Sturges
Gregory T. Sturges