## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHRISTOPHER BAINBRIDGE & KELLY BAINBRIDGE, INDIVID. & AS H/W, | : : : : : | |
| Plaintiffs, | : : | No. 3:16-cv-00411-MEM (Hon. Malachy E. Mannion) |
| v. | : : | |
| U.S. BANK, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6, et al., | : : : : : | |
| Defendants. | : : | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY
## JUDGMENT OF DEFENDANTS U.S. BANK AND OCWEN

**GREENBERG TRAURIG, LLP**
Brian T. Feeney (Pa. I.D. No. 78574)
Gregory T. Sturges (Pa. I.D. No. 200992)
1717 Arch St., Suite 400
Philadelphia, PA 19103
(t) 215.988.7820  (f) 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

*Attorneys for Defendants U.S. Bank
and Ocwen*

Dated: August 9, 2019

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND .........................................................................................2

III.   STATEMENT OF QUESTIONS INVOLVED ...........................................2

IV.    ARGUMENT...............................................................................................3

       A.    Standard of Review. ..........................................................................3

       B.    The Court Should Enter Summary Judgment on Count I. ...................3

             i.    Ocwen Was Not a "Debt Collector" Under the FDCPA. ...........3

             ii.   The Bainbridges Have Established No Causal Link Between the
                   Alleged FDCPA Violation and Their Alleged Damages............6

       C.    The Court Should Enter Summary Judgment on Count II...................8

             i.    There Is Not Material Dispute of Fact on the Improper Purpose
                   and Probable Cause Elements of the Dragonetti Act Claim.......8

             ii.   There Are No Facts to Support the Improper Purpose Element
                   of Plaintiffs' Dragonetti Act Claim. ..........................................9

             iii.  The Undisputed Record Shows That the Bainbridges Had a
                   Poor Payment History, and Had Shorted and Missing Payments
                   in the Relevant Timeframe.......................................................18

V.     CONCLUSION..........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Wells Fargo Bank, N.A.*,
   No. 16-0907, 2017 WL 1355421 (E.D. Pa. Apr. 13, 2017) ...............................12

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) ....................................................................................3

*Bobrick v. Santana Prods., Inc.*,
   698 F. Supp. 2d 479 (M.D. Pa. 2010)....................................................................12

*Broadwater v. Sentner*,
   725 A.2d 779 (Pa. Super. Ct. 1999)........................................................................17

*Ciolli v. Iravani*,
   625 F. Supp. 2d 276 (E.D. Pa. 2009)......................................................................16

*Crafton v. Law Firm of Levine*,
   957 F. Supp. 2d 992 (E.D. Wis. 2013) ....................................................................7

*FTC v. Check Inv'rs, Inc.*,
   502 F.3d 159 (3d Cir. 2007), *abrogated in other part by Henson v.*
   *Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ........................................6

*Henson v. Santander Consumer USA Inc.*,
   137 S. Ct. 1718 (2017)..............................................................................................4

*Johnson-Gellineau v. Steine & Assocs., P.C.*,
   No. 16-9945, 2018 U.S. Dist. LEXIS 53873
   (S.D.N.Y. Mar. 29, 2018) .........................................................................................5

*Joseph v. Wells Fargo Bank, N.A.*,
   No. 13-003128, 2014 WL 2921106 (C.P. Allegheny Apr. 11, 2014) ...............12

*Levert v. Phila. Int'l Records*,
   No. 04-1489, 2005 WL 2789099 (E.D. Pa. Oct. 26, 2005)................................14

*Logan v. Salem Baptist Church of Jenkintown*,
   No. 10-0144, 2010 WL 3364203 (E.D. Pa. Aug. 17, 2010)...............................16

*Ludmer v. Nernberg*,
  640 A.2d 939 (Pa. Super Ct. 1994)....................................................14

*Pascal v. JP Morgan Chase Bank, Nat'l Ass'n*,
  No. 09-10082, 2013 U.S. Dist. LEXIS 33350 (S.D.N.Y.
  Mar. 11, 2013)..................................................................4, 5

*Peek v. Whittaker*,
  --- F. Supp. 3d ---, 2016 WL 6806265 (W.D. Pa. Nov. 17, 2016) ...................16

*Peek v. Whittaker*,
  No. 13-01188, 2014 WL 2154965 (W.D. Pa. May 22, 2014)...........................15

*Perelman v. Perelman*,
  125 A.2d 1259 (Pa. Super. Ct. 2015)................................................17

*Ramos v. Wells Fargo Bank, N.A.*,
  No. 16-0880, 2019 U.S. Dist. LEXIS 69996 (D.N.J. Apr. 24, 2019) .................4

*Regent Insurance Co. v. Strausser Enterprises, Inc.*,
  902 F. Supp. 628 (E.D. Pa. 2012).................................................17

*Schwartz v. OneWest Bank, FSB*,
  614 Fed. App'x 80 (3d Cir. June 5, 2015).........................................12

*Thomas v. Law Firm of Simpson & Cybak*,
  244 F. App'x 741 (7th Cir. 2007)..................................................7

*U.S. Express Lines Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002) ......................................................8

**Statutes**

Dragonetti Act, 42 Pa. C.S. §§ 8351, *et seq.*

  42 Pa. C.S. § 8352..............................................................18

  42 Pa. C.S. § 8354...............................................................9

Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

  15 U.S.C. § 1692a................................................................4

  15 U.S.C. § 1692e................................................................3

15 U.S.C. § 1692k ......................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 11 ..........................................................17

Federal Rule of Civil Procedure 30 ..........................................................11

Federal Rule of Civil Procedure 56 ..........................................................3

# <u>TABLE OF EXHIBITS</u>

**Exhibit**

*Pascal v. JP Morgan Chase Bank, Nat'l Ass'n*,
   No. 09-10082, 2013 U.S. Dist. LEXIS 33350 (S.D.N.Y.
   Mar. 11, 2013).......................................................................................................1

*Ramos v. Wells Fargo Bank, N.A.*,
   No. 16-0880, 2019 U.S. Dist. LEXIS 69996 (D.N.J. Apr. 24, 2019) .................2

*Johnson-Gellineau v. Steine & Assocs., P.C.*,
   No. 16-9945, 2018 U.S. Dist. LEXIS 53873
   (S.D.N.Y. Mar. 29, 2018) ..................................................................................3

*Schwartz v. OneWest Bank, FSB*,
   614 Fed. App'x 80 (3d Cir. June 5, 2015)...........................................................4

*Adams v. Wells Fargo Bank, N.A.*,
   No. 16-0907, 2017 WL 1355421 (E.D. Pa. Apr. 13, 2017) .................................5

*Joseph v. Wells Fargo Bank, N.A.*,
   No. 13-003128, 2014 WL 2921106 (C.P. Allegheny Apr. 11, 2014) ..................6

*Levert v. Phila. Int'l Records*,
   No. 04-1489, 2005 WL 2789099 (E.D. Pa. Oct. 26, 2005)..................................7

*Peek v. Whittaker*,
   No. 13-01188, 2014 WL 2154965 (W.D. Pa. May 22, 2014).............................8

*Logan v. Salem Baptist Church of Jenkintown*,
   No. 10-0144, 2010 WL 3364203 (E.D. Pa. Aug. 17, 2010)................................9

## I.    <u>INTRODUCTION</u>

This is a Dragonetti Act claim brought under 42 Pa. C.S. §§ 8351, *et seq*. It arises out of a Foreclosure Action brought by U.S. Bank and Ocwen against Christopher and Kelly Bainbridge (the "Bainbridges" or "Plaintiffs") in Wayne County, Pennsylvania. Although the state court trial judge ruled in the Bainbridges' favor after a brief trial, no Dragonetti Act case may stand because the undisputed testimony and documents show that (1) Defendants—national financial institutions—filed the Foreclosure Action against the Bainbridges to foreclose, not for any other reason, and (2) the Bainbridges' mortgage loan was in default under a plain reading of the accounting and loan documents, establishing probable cause for filing the Foreclosure Action.

The Bainbridges also have a very limited claim under the Fair Debt Collection Practices Act (the "FDCPA") against Ocwen. However, Ocwen is not a debt collector subject to the Act in this case because it did not "obtain" a loan in default. Instead, it acquired a company (Litton) and took over that company's loan portfolio, including the Bainbridges' loan. Case law holds that under such circumstances, a loan servicer is not subject to the FDCPA. In addition, the undisputed record demonstrates that the Bainbridges cannot prove that the one bankruptcy filing subject of the FDCPA claim caused them any damages.

1

## II.   __BACKGROUND__

Ocwen and U.S. Bank incorporate by reference their Statement of Undisputed Material Facts in Support of Motion for Summary Judgment of Defendants U.S. Bank and Ocwen (the "SOF"), as if set forth fully herein.

## III.   __STATEMENT OF QUESTIONS INVOLVED__

1.    Should the Court grant summary judgment on Plaintiffs' FDCPA claim because Ocwen is not a "debt collector" under the Act, having become Plaintiffs' loan servicer through an acquisition of another company (Litton) rather than a transfer of this particular loan account?

*Answer: Yes*

2.    Should the Court grant summary judgment on Plaintiffs' economic and emotional distress damages claim under the FDCPA because the undisputed record evidence shows that the October 2015 bankruptcy filing (the sole remaining basis for the FDCPA claim) did not cause them any harm?

*Answer: Yes*

3.    Should the Court grant summary judgment on Plaintiffs' Dragonetti Act claim because the uncontroverted record demonstrates that Defendants filed the Foreclosure Action to adjudicate foreclosure, not for any other purpose?

*Answer: Yes*

4.     Should the Court grant summary judgment on Plaintiffs' Dragonetti Act claim because the uncontroverted record demonstrates that they were in default of their obligations under the mortgage loan and thus the Foreclosure Action was filed with probable cause and not with gross negligence?

*Answer: Yes*

## IV.   ARGUMENT

### A.     Standard of Review.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, a party must come forward with specific, admissible, and credible evidence disputing the movant's showing—conclusory denials are not enough. *See, e.g.*, *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Here, the undisputed factual record demonstrates the absence of any genuine issue of material fact as to the elements of each of Plaintiffs' remaining claims.

### B.     The Court Should Enter Summary Judgment on Count I.

#### i.     *Ocwen Was Not a "Debt Collector" Under the FDCPA.*

Count I alleges that Ocwen violated the FDCPA, 15 U.S.C. § 1692e(2)(A), by making a false representation in Plaintiffs' bankruptcy proceeding. Am. Compl.

3

¶¶ 25–30.[1] Ocwen is entitled to summary judgment on this claim because Plaintiffs failed to establish, as a threshold matter, that Ocwen is subject to the FDCPA.

The FDCPA applies only to "debt collectors." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017). That "term does not include," however, "any person collecting or attempting to collect any debt owed or due . . . another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). The FDCPA therefore "exempts mortgage servicers from the definition of 'debt collector' to the extent that the debt being serviced was not in default at the time it was *obtained* by the servicer." *Pascal v. JP Morgan Chase Bank, Nat'l Ass'n*, No. 09-10082, 2013 U.S. Dist. LEXIS 33350, at *10 (S.D.N.Y. Mar. 11, 2013), attached hereto as **Exhibit 1**; *e.g.*, *Ramos v. Wells Fargo Bank, N.A.*, No. 16-0880, 2019 U.S. Dist. LEXIS 69996, at *15 (D.N.J. Apr. 24, 2019) ("[A] mortgage loan servicer will not be subject to the provisions of the [FDCPA] if the disputed debt is current when servicing rights are acquired."), attached hereto as **Exhibit 2**.

Ocwen did not "obtain" the right to service the Bainbridges' loan while it was in default. The FDCPA does not cover mortgage services who acquire servicing rights "as a result of their acquisition of an original mortgage servicing company, rather than through a specific assignment or transfer of the mortgage." *Pascal*,

---

[1]    Plaintiffs do not assert Count I against U.S. Bank.

2013 U.S. Dist. LEXIS 33350, at *10. In *Pascal*, for example, the plaintiffs alleged that JPMorgan was a debt collector "because their loan was in default as of the time that JPMorgan acquired certain assets of [Washington Mutual], including the right to service their loan." *Id.* The Court disagreed, explaining that the consensus among courts was that "such defendant companies are not 'debt collectors' under the FDCPA because, as a result of the merger or acquisition, they stand in the place of the original servicing company as [p]laintiffs' loan servicer." *Id.* at *11 (brackets and quotation marks omitted). JPMorgan, then, "did not 'obtain' Plaintiffs' mortgage while it was in default; rather, by way of its acquisition of [Washington Mutual], [JPMorgan] stands in the place of [Washington Mutual] as Plaintiffs' loan servicer." *Id.* at *12 (quotation marks omitted).

The same is true here. Ocwen did not acquire the right to service the Bainbridges' loan through a specific assignment or transfer solely for the purpose of debt collection after default. Rather, it assumed that right on June 5, 2011, when its parent corporation acquired all of the outstanding partnership interests of the original mortgage servicer, Litton, including a servicing portfolio that included the servicing rights to the loan. SOF, at ¶ 48.

In doing so, Ocwen stepped into the shoes of Litton, the original mortgage servicer that, of course, began servicing the loan when it was current. SOF, at ¶ 14. Ocwen too, then, "obtained" the loan when it was current. *See, e.g., Johnson-*

*Gellineau v. Steine & Assocs., P.C.*, No. 16-9945, 2018 U.S. Dist. LEXIS 53873, at *39–40 (S.D.N.Y. Mar. 29, 2018) (finding that "Chase obtained Plaintiff's loan before she defaulted" where "Chase obtained Plaintiff's loan as part of an acquisition of *all* of EMC's mortgage servicing rights and obligations, rather than through a specific assignment or transfer of Plaintiff's mortgage for the purposes of debt collection after default"), attached hereto as **Exhibit 3**.

Because Ocwen was not a debt collector subject to the FDCPA in servicing Plaintiffs' loan, the Court should enter summary judgment in its favor on Count I.

### ii. *The Bainbridges Have Established No Causal Link Between the Alleged FDCPA Violation and Their Alleged Damages.*

The sole remaining basis for Count I is Ocwen's filing one allegedly inaccurate "Response Disagrees With Trustee's Notice of Final Cure" on October 12, 2015 (the "Response to the Notice of Cure"), in the Bainbridges' bankruptcy proceeding. Am. Compl. ¶ 29(a). Even if that single instance constituted an FDCPA violation (and it did not), the Bainbridges would not be entitled to anything more than nominal statutory damages, and the Court should, at a minimum, enter partial summary judgment on that point.

"The FDCPA allows consumers to sue an offending creditor for actual damages, attorney's fees and costs, as well as statutory damages up to $1,000." *FTC v. Check Inv'rs, Inc.*, 502 F.3d 159, 166 (3d Cir. 2007), *abrogated in other part by Henson*, 137 S. Ct. 1718. Statutory damages cannot exceed $1,000 per lawsuit, per

6

plaintiff, rather than $1,000 per violation. 15 U.S.C. § 1692k(a)(2)(A). As for actual damages, the statute provides that a plaintiff may only recover damages "sustained . . . as a result of" the FDCPA violation. 15 U.S.C. § 1692k(a)(1). Accordingly, "only losses flowing from an FDCPA violation are recoverable as actual damages." *Thomas v. Law Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007); *see also, e.g.*, *Crafton v. Law Firm of Levine*, 957 F. Supp. 2d 992, 1002 (E.D. Wis. 2013) ("[T]here must be a causal connection between the violation and the damages alleged."). A debtor who "cannot link [alleged actual] damages" to the FDCPA violation cannot recover them. *Thomas*, 244 F. App'x at 743.

The Bainbridges have presented no evidence that Ocwen's Response to the Notice of Cure caused them any financial harm or emotional distress. They both testified extensively about the alleged harm to their credit that flowed from the Foreclosure Action. SOF, at ¶¶ 77–82. However, they never once mentioned the Response to the Notice of Cure as a reason that lenders declined them credit. *Id.* Instead, the creditors explained that their bankruptcy or their foreclosure was the problem. *Id.* When Mrs. Bainbridge was shown the Response to the Notice of Cure, she testified clearly that no creditor, lender, or bank had ever told her that it formed the basis for their decision to decline credit. *Id.* at ¶ 82. Indeed, there is no evidence that any of the Bainbridges' potential creditors ever even saw the Response to the Notice of Cure. *Id.* at ¶ 78. In short, the Bainbridges cannot sustain

their burden of proof that the Response to the Notice of Cure caused them any economic harm.

The Bainbridges' testimony is equally clear that it was the Foreclosure Action that caused their alleged emotional distress. SOF, at ¶ 83–87. Mr. Bainbridge testified that his marriage underwent stress at the beginning of the foreclosure process when he accused his wife of stealing mortgage payments. *Id.* Mrs. Bainbridge reiterated her husband's testimony. *Id.* They made no mention of the Response to the Notice of Cure having affected her emotional well-being, and it is impossible that it could have because it was filed almost two years *after* they testified that they had marital problems. Accordingly, they have also failed to sustain their burden to show that the Response to the Notice of Cure caused them any emotional distress.

### C.   The Court Should Enter Summary Judgment on Count II.

#### i.   *There Is Not Material Dispute of Fact on the Improper Purpose and Probable Cause Elements of the Dragonetti Act Claim.*

"[A] party seeking redress under [the] Dragonetti [Act] bears a heavy burden." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). To prevail on a claim under the Dragonetti Act, a plaintiff must establish the following: (1) defendant has procured, initiated, or continued the civil proceedings against him; (2) the proceedings were terminated in his favor; (3) defendant did not have probable cause for his action; (4) the primary purpose for which the proceed-

ings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based; and, (5) the plaintiff has suffered damages. 42 Pa. C.S. § 8354(1)–(5).

### ii.    There Are No Facts to Support the Improper Purpose Element of Plaintiffs' Dragonetti Act Claim.

The Bainbridges must demonstrate that "the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based." 42 Pa. C.S. § 8354(4). There is no factual dispute on this point. The Bainbridges have failed to produce any evidence that Ocwen or U.S. Bank filed the Foreclosure Action for an improper purpose, let alone primarily for an improper purpose. To the contrary, the undisputed record—reiterated by every single witness deposed in this case—is that Ocwen and U.S. Bank filed the Foreclosure Action to foreclose. The Bainbridges thus cannot sustain their burden on this core element of their claims.

Starting with their Complaint, the Bainbridges have never been able to articulate, let alone prove, the supposed improper purpose that two national residential mortgage companies—Ocwen and U.S. Bank—had in filing the Foreclosure Action against them. The operative Amended Complaint ("FAC") alleges no facts, or even legal conclusions, regarding Ocwen and U.S. Bank's alleged primary purpose in bringing the Foreclosure Action. The gist of the claim in the FAC is that Defendants were incorrect to assert that the Bainbridges were in default, not that de-

fendants initiated the Foreclosure Action for a purpose other than the relief sought on the face of their pleadings. Count II's allegations (FAC, ¶¶ 31–36) do not even mention Defendants' alleged "primary purpose" in filing the Foreclosure Action. To the contrary, to the extent the FAC touches the issue at all, it alleges that the only purpose of the Foreclosure Action was to "sell [P]laintiffs' home at sheriff's sale," the proper remedy in any foreclosure suit. FAC, ¶ 40(c).

The Bainbridges' case did not improve in discovery. During his deposition, Mr. Bainbridge agreed that "the primary purpose of this filing [the Foreclosure Action] was to foreclose on your house, to sell your house and to recover what they [Defendants] claimed[—]and you disagree with[—]was the amount owed on your loan." SOF, at ¶ 55. He also testified that none of the foreclosure attorneys prosecuting the Foreclosure Action ever told him that the case was filed for any purpose other than to foreclose. SOF, at ¶ 56. The same was true of Ocwen, which he called many times over the years. SOF, at ¶ 57. "[E]very time" he contacted Ocwen about the Mortgage, they told him he was behind in payments. SOF, at ¶ 58. Mr. Bainbridge also agreed that Ocwen and U.S. Bank had no motive to single him out: he did not know anyone personally at either company and he was not a business competitor with them. SOF, at ¶ 59. Mrs. Bainbridge confirmed this testimony, SOF, at ¶ 60–62, and agreed that "there was no reason to file this foreclosure suit other than for them to recoup on a loan that they thought, perhaps mistakenly, was be-

hind in payments." SOF, at ¶ 60.

The other two fact witnesses deposed in this matter gave similar testimony. Mark Udren, the name partner in the now defunct law firm that prosecuted the Foreclosure Action on Defendants' behalf, testified that he had no reason to believe that either Ocwen or U.S. Bank had instructed his law firm to file the Foreclosure Action for any reason other than to collect on a debt they believed was past due. SOF, at ¶ 64. Kevin Flannigan, Ocwen and U.S. Bank's Rule 30(b)(6) witness, gave similar uncontradicted testimony: he agreed that the only reason U.S. Bank and Ocwen filed the Foreclosure Action was to foreclose. SOF, at ¶ 65.

Plaintiff's expert gave similar testimony. Tellingly, he claimed that the improper purpose was "to collect moneys that were not owed." SOF, at ¶ 67. However, as discussed below, this conflates the probable cause element of the Dragonetti Act with the improper purpose element. Moreover, it gives away the game: collecting money is the purpose of a foreclosure suit, *i.e.*, selling a secured asset to recoup on a loan. All the witnesses agree that collecting money by selling the Property at sheriff's sale was the purpose of the Foreclosure Action. The undisputed evidence, thus, establishes that Ocwen and U.S. Bank filed the Foreclosure Action to "adjudica[te] the claim on which the proceedings were based," *i.e.*, to foreclose on the Property and pay off the Mortgage.

Case law from the Third Circuit supports Defendants' position. When faced

11

with a similar question on a motion to dismiss in an abuse of process claim, *i.e.*, whether the defendant sought "to coerce a result that is not the legitimate object of the process," the Third Circuit held, in a lawsuit based on defendants' alleged wrongful prosecution of a foreclosure action, that plaintiff's claim failed because defendants simply sought to foreclose on the property, an authorized goal of the foreclosure procedure. *Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x 80, 83–84 (3d Cir. June 5, 2015), attached hereto as **Exhibit 4**.

The Third Circuit held that, "***even if the foreclosure action was based on incorrect facts, the allegations in the FAC do not demonstrate that the process was pursued to achieve an unauthorized purpose***." *Id.* at 84 (emphasis added); *see also Adams v. Wells Fargo Bank, N.A.*, No. 16-0907, 2017 WL 1355421, at *2–3 (E.D. Pa. Apr. 13, 2017) (dismissing Dragonetti Act claim on the pleadings because "plaintiffs failed to allege that defendants initiated the foreclosure action for an improper purpose"), attached hereto as **Exhibit 5**; *Joseph v. Wells Fargo Bank, N.A.*, No. 13-003128, 2014 WL 2921106, at *2 (C.P. Allegheny Apr. 11, 2014) (Wettick, J.) (sustaining preliminary objections to Dragonetti Act claim arising out of dismissed foreclosure action because plaintiffs had not "identif[ied] any facts that would support a finding that defendant initiated the foreclosure action for a purpose other than securing adjudication of the claim"), attached hereto as **Exhibit 6**; *Bobrick v. Santana Prods., Inc.*, 698 F. Supp. 2d 479, 499 (M.D. Pa. 2010)

12

(dismissing Dragonetti Act claim because, among other reasons, the improper pur-
pose asserted by plaintiff—forcing it to alter its marketing efforts—was a legiti-
mate aim of the Lanham Act claims asserted in underlying litigation).

This case is no different: Even if the Court credits the Bainbridges' claims
that there was no post-petition default, they have no evidence to support the re-
quired element of their claim that Defendants acted for an improper purpose. This
is no accident. As the unanimous deposition testimony confirms, it is difficult to
conceive that a national bank and mortgage servicing company would bring a
mortgage foreclosure action against an individual homeowner for any purpose oth-
er than to execute on their secured interest in the property following default.

Defendants anticipate that the Bainbridges will rely on cases stating that a
Dragonetti Act plaintiff may "infer" improper purpose if it is established that the
underlying action was filed without probable cause. *See* March 30, 2017 Mem. on
Defs.' Mots. to Dismiss Am. Compl., Dkt. No. 36, at 40–41. Of course, as set forth
below, the undisputed facts in this case establish that the Bainbridges had multiple
instances of default on their Mortgage after they filed for bankruptcy. As a result,
the Foreclosure Action was filed with probable cause, and the Bainbridges may not
rely on this case law to stand in for actual evidence of probable cause.

Nonetheless, this law would be inapposite even if the Court rejected De-
fendants' argument that they had probable cause to file the Foreclosure Action.

The cases hold that an improper purpose may be inferred, *i.e.*, that direct evidence is unnecessary. But before an inference is permissible, there must be some fact on which a jury could find that the defendant initiated the underlying action for a reason other than to adjudicate the claim asserted. *See, e.g.*, *Ludmer v. Nernberg*, 640 A.2d 939, 941, 943–44 (Pa. Super Ct. 1994) (holding that inference could be made that attorney filed action against doctor for an improper purpose because doctor had allegedly caused him to lose a settlement fee in a prior case and because attorney's client had not given him permission to file case and had no knowledge of it). In *Ludmer*, the Superior Court held that it was permissible for the jury to infer an improper purpose, given (1) the prior bad relationship between the defendant (plaintiff's counsel) and the plaintiff (the doctor) and (2) defendant's failure to obtain his client's consent before filing suit, which suggested malfeasance. *Id.*

The record in this case reveals no such facts. Every single witness said that the Foreclosure Action's purpose was to collect money, *i.e.*, a legitimate aim of the foreclosure process. A jury could not possibly infer an improper purpose given the unanimous testimony that the purpose was to foreclose. *See Levert v. Phila. Int'l Records*, No. 04-1489, 2005 WL 2789099, at *4–5 (E.D. Pa. Oct. 26, 2005) (the test for abuse of process is whether the legal process was used "primarily—not exclusively—to achieve a goal unauthorized by the procedure in question."), attached hereto as **Exhibit 7** (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337

F.3d 297, 307 (3d Cir. 2003)). Indeed, consider the consequence of Plaintiffs' position: they and their alleged legal expert, Mark Pearlstein, contend that a financial institution violates the Dragonetti Act every time it files and then loses an action seeking to collect on a debt, because the alleged purpose of the action, in that case, was "to collect moneys that were not owed." SOF, at ¶¶ 67–98. But that cannot be the law—a Dragonetti Act does not lie simply because a plaintiff fails to prove its cause of action and to hold otherwise would create a new liability in every losing case in the Commonwealth.

A careful examination of the case law bears this out. For example, in *Peek v. Whittaker*, No. 13-01188, 2014 WL 2154965 (W.D. Pa. May 22, 2014), attached hereto as **Exhibit 8**, the Court stated in a footnote that improper purpose may be inferred. *Id.* at *6 n.8. But when the Court examined the alleged facts in deciding a motion to dismiss, it found that the plaintiff had established, at least at the pleadings stage, a specific improper purpose, namely "that Defendants brought the state court lawsuits to obstruct Plaintiffs' ability to establish a competing business." *Id.* at *6 (citing U.S. Supreme Court case holding that suppression of business competition was an improper purpose to bring legal action). In other words, in *Peek*, even on the pleadings, the plaintiff presented a far more specific alleged improper pur-

15

pose than Plaintiffs' have presented after completing fact discovery here.[2]

The same is true of *Logan v. Salem Baptist Church of Jenkintown*, No. 10-0144, 2010 WL 3364203 (E.D. Pa. Aug. 17, 2010), attached hereto as **Exhibit 9**. *Logan* notes in passing that improper purpose may be inferred, but when deciding the motion to dismiss finds that the underlying litigation was "done for the purpose of forcing a settlement in an unrelated case," *i.e.*, not to adjudicate the claims brought in the underlying case itself. *Id.* at *8; *see also id.* at *3 ("[A]ccording to Plaintiffs' Amended Complaint the reason for this pressure was not a belief that Logan [plaintiff] had violated any laws, but a desire to impact the arbitration proceedings and to embarrass Logan."); *accord Ciolli v. Iravani*, 625 F. Supp. 2d 276, 295 (E.D. Pa. 2009) (on motion to dismiss finding that plaintiff's allegation that the underlying suit had been filed to "coerc[e] the settlement of unrelated claims by a non-party" sufficed to support improper purpose element at pleadings stage). Of course, there has never been suggestion in this case that U.S. Bank or Ocwen filed the Foreclosure Action to pressure the Bainbridges to settle another litigation.

---

[2]     Later in the case, the *Peek* Court granted summary judgment to the defendant, finding that plaintiff had failed to sustain its burden as to probable cause. *Peek v. Whittaker*, --- F. Supp. 3d ---, 2016 WL 6806265, at *4–5 (W.D. Pa. Nov. 17, 2016). The Court also examined improper purpose in connection with plaintiff's abuse of process claim and found that plaintiff had failed to sustain its burden because the defendant had brought the underlying suit to "[v]indicat[e] contractual rights" which is a "legitimate use of legal process." *Id.* at *6. This holding is important here, where the undisputed record establishes that the Foreclosure Action was filed to foreclose, a legitimate use of legal process.

**_There are no other matters between the parties in this case._**

The decisions from the Pennsylvania Superior Court are similar. In *Broad-water v. Sentner*, 725 A.2d 779 (Pa. Super. Ct. 1999), a Dragonetti Act claim was brought against an attorney who filed a petition to revoke letters of administration granted to the grandparents of a 27 month-old child who died in a car accident. *Id.* at 781. After the trial court denied the petition, the grandparents brought a Dragonetti Act claim against the attorney and his client, the petitioner, who had claimed to be the deceased child's biological father. *Id.* The Court found that, from the depositions, a fact finder could infer an improper purpose; however, the Court inferred a specific improper purpose, namely that the attorney "may have also had a personal financial interest in Deems [his client] becoming the administrator of the estate." *Id.* at 785. Again, there were facts on which to base the inference and an articulated improper purpose. There are no such facts here.[3]

---

[3]     In its Memorandum on Defendants' Motions to Dismiss (Dkt. No. 36 at 41), the Court cited *Regent Insurance Co. v. Strausser Enterprises, Inc.*, 902 F. Supp. 628, 640 n.34 (E.D. Pa. 2012), but *Regent* does not actually decide any Dragonetti Act issues. Instead it decides whether an insurance contract provides coverage for such claims. It is, thus, of limited persuasive value in deciding the issue now before the Court. Similarly, *Perelman v. Perelman*, 125 A.2d 1259, 1264 (Pa. Super. Ct. 2015), decided the issue of whether a federal court's denial of Rule 11 sanctions had preclusive effect on a Dragonetti Act claim later filed in state court. *Perelman* did not make any findings that bear on the question before this Court.

### iii.    *The Undisputed Record Shows That the Bainbridges Had a Poor Payment History, and Had Shorted and Missing Payments in the Relevant Timeframe.*

Probable cause exists if the person initiating the action "reasonably believes in the existence of the facts upon which the claim is based, and [] [r]easonably believes that under those facts the claim may be valid under the existing or developing law." 42 Pa. C.S. § 8352(1). This test is met here. The record reveals several undisputed facts showing the Bainbridges defaulted on their mortgage loan obligations after they filed for bankruptcy in November 2010.

The Bainbridges' troubles with their mortgage loan began with their decision to withhold eight months of payments in 2010 (payments they admit they were financially capable of making), because they wanted leverage against their mortgage company in a dispute over an escrow amount. SOF, at ¶¶ 16–17. After withholding payment failed to resolve the dispute, the Bainbridges filed for voluntary Chapter 13 bankruptcy in November 2010, despite admitting at deposition that they had the wherewithal to cover their financial obligations. SOF, at ¶ 18.

Once they entered bankruptcy, in addition to their payments to the bankruptcy trustee to repay the pre-petition arrearage that they had manufactured upon the advice of counsel not to pay their bills, they still had to make monthly payments directly to U.S. Bank and Ocwen (and before it, Litton) to cover the Mortgage. SOF, at ¶¶ 19–27. The amount of the monthly payment, as confirmed by the bank-

ruptcy court, was $1,407.08. SOF, at ¶ 26. Nonetheless, in the first two months fol-

lowing their filing for bankruptcy (December 2010 and January 2011), they short-

ed their payments each month, and never made up the shorted amounts. SOF, at ¶

28. The Bainbridges' 30-year Adjustable Rate Note states that "*If I do not pay the*

*full amount of each monthly payment on the date it is due, I shall be in default.*"

SOF, at ¶ 7 (emphasis added). As such, these two short payments *alone* placed the

Bainbridges in default, justified foreclosure, and gave U.S. Bank and Ocwen prob-

able cause to file the Foreclosure Action. Even their purported expert legal witness,

Mark Pearlstein, agreed that, because of these two payments, the Bainbridges were

delinquent or in arrears on the Mortgage for over two years after they filed for

bankruptcy. SOF, at ¶ 34.

But that was not all. The Bainbridges also missed their payment for Decem-

ber 2011 entirely. SOF, at ¶¶ 35–38. They mistakenly thought they had made the

payment and even told their first attorney that they had. That attorney, in turn, cre-

ated a payment history including a false entry showing a payment for December

2011, even though none had been made and no records exist to support that asser-

tion. SOF, at ¶¶ 35–36. Their subsequent counsel corrected this mistake, although

not before the Foreclosure Action proceeded to trial. SOF, at ¶ 37. They also told

Ocwen in this time period that they had never missed a payment. SOF, at ¶ 39. In

her deposition, Mrs. Bainbridge admitted that this statement she and her husband

made to Ocwen was untrue. *Id.* Regardless, the missed payment in December 2011 is another clear instance of default, establishing that the Foreclosure Action was filed with probable cause.

Last, the undisputed facts establish that by the end of 2013, the Bainbridges were consistently one month behind in their payments, in addition to having short-ed their first two post-petition payments. SOF, at ¶¶ 41–46. This is yet another default under the Note, justifying foreclosure and establishing probable cause.

Judge Hamill's verdict in the Foreclosure Action reinforces these points: he stated that "Ocwen ***believed*** it had taken over servicing of a delinquent mortgage." SOF, at ¶ 71 (emphasis added). Thus, even if Plaintiffs' had developed evidence of improper purpose, summary judgment would still be warranted on Count II.

## V.   **CONCLUSION**

The Court should enter summary judgment in U.S. Bank and Ocwen's favor,

and against Plaintiffs.

Respectfully submitted,

Dated: August 9, 2019                     **GREENBERG TRAURIG, LLP**

s/ Gregory T. Sturges
Brian T. Feeney (Pa. I.D. No. 78574)
Gregory T. Sturges (Pa. I.D. No. 200992)
1717 Arch St., Suite 400
Philadelphia, PA 19103
(t) 215.988.7820  (f) 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

*Attorneys for Defendants U.S. Bank
and Ocwen*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER BAINBRIDGE & KELLY BAINBRIDGE, INDIVID. & AS H/W, | : : : : : | |
| Plaintiffs, | : : | No. 3:16-cv-00411-MEM (Hon. Malachy E. Mannion) |
| v. | : : | |
| U.S. BANK, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6, et al., | : : : : : | |
| Defendants. | : : | |

### CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.8(b), I, Gregory T. Sturges, certify that U.S. Bank and Ocwen's Brief in Support of Motion for Summary Judgment contains 4,945 words, as counted by the word count feature of Microsoft Word, which was used to prepare the brief.

*/s/ Gregory T. Sturges*

Gregory T. Sturges (Pa. I.D. No. 200992)

*Attorneys for Defendants U.S. Bank and Ocwen*