## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CHRISTOPHER BAINBRIDGE & KELLY BAINBRIDGE, INDIVID. & AS H/W, | : : : : : | |
| Plaintiffs, | : : | No. 3:16-cv-00411-MEM (Hon. Malachy E. Mannion) |
| v. | : : | |
| U.S. BANK, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6, et al., | : : : : : | |
| Defendants. | : : | |

## MEMORANDUM IN SUPPORT OF MOTION TO
## <u>EXCLUDE THE OPINION TESTIMONY OF MARK PEARLSTEIN</u>

**GREENBERG TRAURIG, LLP**
Brian T. Feeney (Pa. I.D. No. 78574)
Gregory T. Sturges (Pa. I.D. No. 200992)
1717 Arch St., Suite 400
Philadelphia, PA 19103
(t) 215.988.7820  (f) 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

*Attorneys for Defendants U.S. Bank
and Ocwen*

Dated: August 9, 2019

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................1

II.     FACTUAL BACKGROUND...............................................................2

     A.      Mr. Pearlstein Is a Long-Time General Practitioner, But Has
          Limited Knowledge of or Experience With the Dragonetti Act. ..........2

     B.      Mr. Pearlstein Did Not Review the Key Documents in This
          Case, Including the Loan Transaction History (or Even
          Summaries of It) or Any of the Fact Testimony, Among Other
          Things. .......................................................................................6

III.    LEGAL STANDARD ...................................................................11

IV.     ARGUMENT.................................................................................11

     A.      Mr. Pearlstein Is Not Qualified to Offer Expert Opinions in a
          Dragonetti Act Case Involving a Loan Servicer. ................................11

     B.      Mr. Pearlstein's Opinions Are Not Reliable. ......................................13

     C.      Mr. Pearlstein's Opinions Would Not Assist the Court......................15

V.      CONCLUSION.............................................................................18

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Calhoun v. Yamaha Motor Corp., U.S.A.*,
  350 F.3d 316 (3d Cir. 2003) ........................................................................12, 13

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993)......................................................................................11, 14

*GE v. Joiner*,
  522 U.S. 136 (1997)............................................................................................14

*In re Paoli R.R. Yard Pcb Litig.*,
  35 F.3d 717 (3d Cir. 1994) .................................................................................13

*Pappas v. Sony Elecs., Inc.*,
  136 F. Supp. 2d 413 (W.D. Pa. 2000).................................................................14

*Rowland v. Novartis Pharms. Corp.*,
  9 F. Supp. 3d 553 (W.D. Pa. 2014).....................................................................11

*Soldo v. Sandoz Pharms. Corp.*,
  244 F. Supp. 2d 434 (W.D. Pa. 2003).................................................................11

*Wonderland Nurserygoods Co. v. Thorley Indus. LLC*,
  2015 U.S. Dist. LEXIS 110935 (W.D. Pa. Aug. 21, 2015)................................11

**Other Authorities**

Federal Rule of Evidence 702...................................................................................11

# TABLE OF EXHIBITS

**Exhibit**

Resume of Mark S. Pearlstein (undated) ....................................................A

Deposition of Mark S. Pearlstein (July 10, 2019)......................................B

Letter From Mark S. Pearlstein to Robert P. Cocco (May 20, 2019).......................C

Report of Mark S. Pearlstein (April 29, 2019) ..........................................D

Rebuttal Report of Patrick J. Best (June 26, 2019)....................................E

Order Granting Ocwen's Motion for Relief From Automatic Stay
    (Aug. 6, 2013) ....................................................................... F

*Wonderland Nurserygoods Co. v. Thorley Indus. LLC*,
    No. 13-00387, 2015 U.S. Dist. LEXIS 110935
    (W.D. Pa. Aug. 21, 2015) .......................................................G

*Nye v. Ingersoll Rand Co.*, No. 08-3481,
    2011 WL 5513190 (D.N.J. Nov. 9, 2011) ...........................................H

*Langbord v. U.S. Dep't of Treasury*, No. 06-5315,
    2009 WL 1312576 (E.D. Pa. May 7, 2009).......................................... I

## I.   <u>INTRODUCTION</u>

The Bainbridges' proposed legal expert Mark Pearlstein should not be permitted to testify in this action for three reasons:

He is unqualified to testify about the Dragonetti Act and how it applies to mortgage lenders and servicers because he lacks relevant professional experience and knowledge.

Regardless of qualifications, his opinions lack support. Although he wishes to opine before the Court that the Bainbridges' mortgage loan was not in default, he reviewed no financial documents in this case at all. It is unfathomable that a purported expert witness on loan accounting should be permitted to testify about that subject without having reviewed the relevant transaction histories and payment documents (or even summaries of them).

Last, his opinion is unhelpful to the Court because he offers legal conclusions. His written report is a legal brief in the guise of an expert report. His base opinion is that Defendants violated the Dragonetti Act. He reaches that conclusion by applying facts to law. Experts are not permitted to do that in the Third Circuit. His testimony would usurp the role of the Court in telling the fact finder what the law is, and would invade the fact finder's role too, instructing them how to interpret the facts in light of governing law. Indeed, he admitted at deposition that his role is "to apply facts to law."

## II.     FACTUAL BACKGROUND

### A.     Mr. Pearlstein Is a Long-Time General Practitioner, But Has Limited Knowledge of or Experience With the Dragonetti Act.

Mr. Pearlstein is a general private practice attorney, and has been for nearly his entire career. *See* Pearlstein Resume, Exhibit 3 to Pearlstein Dep., attached hereto as **Exhibit A**. Since 1985, he has been counsel or partner in various law firms, and since 1995, he has been a solo practitioner. *See id.* During his deposition, he was unsure which law firm he last partnered with. *See* July 10, 2019 Deposition of Mark Pearlstein ("Pearlstein Dep."), at 53:3–12 ("Yes, I think it was, yes, you're right, it was sorry [...] No, actually, it's wrong [...]"), attached hereto as **Exhibit B**.

In the past five years, he has devoted 15% to 18% of his law practice to foreclosure defense work. *Id.* at 17:21–18:3. The remainder of his practice is comprised of trusts, contracts, personal injury, and other real estate matters. *Id.* at 18:4–9. Most of that work is as a litigation attorney. *Id.* at 18:17–18 ("It seems I can't get away from it."). Although his resume states that he was "General Counsel" for several financial services companies, he clarified at deposition that he was not employed by those companies, but rather served as outside counsel. *Id.* at 48:3 ("they're just clients."); 48:19–20 ("I guess it might have been better put as outside General Counsel."). Mr. Pearlstein has never been employed by a bank or a loan servicing company other than in the capacity as outside counsel. *Id.* at 60:21–

2

61:17. He has also never personally or professionally dealt with any loan servicing platforms. *Id.* at 86:7–17. He is also unfamiliar with "comments logs," which are common documents used by financial services companies listing in chronological order all transactions and communications relating to a particular loan. *Id.* at 131:11–24 ("Didn't know it [the comments log] exi[s]ted."). He incorrectly speculated during his depositions that a comments log is "an internal document kept by the bank that has comments on litigation that is ongoing." *Id.* at 132:7–8.

Mr. Pearlstein has served as an expert witness in only about six cases; maybe one involved the Dragonetti Act. *Id.* at 9:24–10:5; *see also* May 20, 2019 Letter From Mr. Pearlstein to Mr. Cocco, Exhibit 2 to Pearlstein Dep., attached hereto as **Exhibit C**. Of the six cases comprising Mr. Pearlstein's experience in giving expert testimony, one was a divorce action involving the calculation of the net present value of a French pension in Euros (Pearlstein Dep., **Ex. B**, at 26:19–27:5), another was a Fair Debt Collection Practices Act (the "FDCPA") case arising out of credit card debt (*id.* at 28:6–12, 30:9–11), three others were foreclosure cases involving calculation of a variable rate mortgage (*id.* at 31:4–16, 37:21–38:4, 41:19–42:7), and another was a breach of contract action involving a revoked loan modification offer (*id.* at 31:4–16, 37:21–38:4, 40:9–41)). Mr. Pearlstein changed

his testimony during the deposition, and opined that the FDCPA case had a "Dragonetti aspect to it." *Id.* at 33:6–10.[1]

Other than the one case in which he thinks he was an expert on Dragonetti Act issues, he only has two professional experiences with the Act. The first was when a former client sued him under it. *Id.* at 45:10–47:2. His former client ultimately dismissed the suit against him after the judge screamed at the plaintiff for bringing the action. *Id.* In the second case, Mr. Pearlstein was again unsure of exactly what occurred. *Id.* at 55:3–56:13 ("No, I think I may have it wrong. It might be in reverse […]"). According to his memories of this case from the 1980s or 1990s, he represented a tire distributor that had been sued. *Id.* at 57:1–11. After the tire distributor prevailed as a defendant in the underlying action, it then filed a Dragonetti Act suit against counsel for its party opponent in the first suit. *Id.* Mr. Pearlstein lost at trial because his client "missed one element" of the Dragonetti Act claim, although he could not recall which. *Id.* at 57:12–58:6. To the best of Mr. Pearlstein's recollection, these are the only two Dragonetti Act suits in which he "actually showed up and litigated." *Id.* at 60:8–9.

---

[1]  Despite a request from undersigned counsel on the record, Mr. Pearlstein has not produced his report from that case to date. Pearlstein Dep., **Ex. B**, at 33:21–34:2. Accordingly, Defendants have been unable to evaluate either the accuracy of Mr. Pearlstein's testimony in this respect (on the record, he said "I'm just not positive" whether the case involved a Dragonetti Act claim, *id.* at 33:8), or his opinions in that case. His opinions from that case could be particularly pertinent here because he was engaged by a defendant in a Dragonetti case there.

His lack of experience in this area was highlighted at his deposition. In his report, Mr. Pearlstein first mentions Ocwen's October 2015 bankruptcy filing as the basis for his legal opinion that Defendants violated the Dragonetti Act. *See* April 29, 2019 Expert Report of Mark Pearlstein, at 12–16, attached hereto as **Exhibit D**. However, Defendants' rebuttal expert Patrick J. Best, Esq. noted that this section of Mr. Pearlstein's report was legally flawed:

> It is legally impossible for any action in bankruptcy court to form the basis of a Dragonetti Action. Oberdick v. Trizechahn Gateway LLC, et. al., 168 A.3d 215 (Pa.Super. 2017) (citing Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien et. al., 908 A.2d 875 (Pa. 2006)).

June 26, 2019 Rebuttal Report of Patrick J. Best, Esq., at § IV(a), attached hereto as **Exhibit E**. At his deposition, Mr. Pearlstein withdrew the portion of his report claiming that a pleading filed by Ocwen in bankruptcy court could give rise to a Dragonetti Act claim. Pearlstein Dep., **Ex. B**, at 8:24–9:4. ("I am convinced by Mr. Best's case law that what happened in the Bankruptcy Court can only be handled by a Rule 11 or a similar function, but would not be appropriate under a Dragonetti […]"). Of course, the Pennsylvania Supreme Court's decision in *Stone Crushed Partnership* and its progeny is not "Mr. Best's case law," but the law of the Commonwealth—law that has been on the books for over a dozen years and of which Mr. Pearlstein was unaware until recently. *Id.* at 141:2–4 (agreeing that he was "not aware of that law at [the] time you wrote your report"). In sum, the ***very first***

*thing* that Mr. Pearlstein claimed in his report that Defendants did to violate the Dragonetti Act was a serious legal error.

Mr. Pearlstein also agreed that there was another serious problem with his now-withdrawn opinion that Ocwen's October 2015 bankruptcy court filing could give rise to a Dragonetti Act claim: the Bainbridges had never prevailed in the bankruptcy court on this issue because the propriety of Ocwen's bankruptcy court filing was never litigated. *Id.* at 147:20–148:2. Clearly, he had not considered that before writing, and then submitting, his expert report. This was not the only gap in Mr. Pearlstein's knowledge either. As is discussed below, Mr. Pearlstein was also unaware of a Third Circuit decision that bears on the proof necessary to sustain a claim that a foreclosure action was filed for improper purpose. *See infra* note 2.

**B.    Mr. Pearlstein Did Not Review the Key Documents in This Case, Including the Loan Transaction History (or Even Summaries of It) or Any of the Fact Testimony, Among Other Things.**

Mr. Pearlstein's review of materials in this case was very limited. He reviewed the complaint in the Foreclosure Action (including the Act 91 Notice attached to it), some discovery responses from U.S. Bank and Ocwen, an email between the Bainbridges' counsel and foreclosure counsel in the Foreclosure Action dated in February 2015, and Ocwen's October 2015 bankruptcy court filing. Pearlstein Dep., **Ex. B**, at 69:24–70:14. However, he did not review the following items:

- Deposition of Christopher Bainbridge or any of the exhibits thereto (*id.* at 79:13–17);

- Deposition of Kelly Bainbridge (*id.* at 156:17–19 (agreeing that he had not "review[ed] any of the fact testimony"));

- Deposition of Mark Udren (*id.*);

- Deposition of U.S. Bank and Ocwen's Rule 30(b)(6) witness or any of the exhibits thereto (*id.* at 154:3–11);

- Briefing on the parties' motions to dismiss in this case (*id.* at 181:16–21);

- A decision from the Third Circuit regarding what sorts of allegations sufficed to show improper purpose in underlying foreclosure claims (*id.* at 173:15–182:15);[2]

---

[2] When presented with the Third Circuit's unreported opinion in *Schwartz v. OneWest Bank, FSB*, 614 Fed. App'x 80, 83–84 (3d Cir. June 5, 2015), Mr. Pearlstein admitted he had never seen it before. Pearlstein Dep., **Ex. B**, at 173:12–14. Undersigned counsel read into the record the passage from *Schwartz*, which states, "Thus, even if the foreclosure action was based on incorrect facts, the allegations in the FAC do not demonstrate that the process was pursued to achieve an unauthorized purpose." *Id.* at 173:15–174:20. Counsel asked Mr. Pearlstein whether this case changed his view of the case, and if not, why not. *Id.* at 180:20–181:1 ("Why is it that you think […] this opinion is not applicable to this case?"). He refused to answer, telling undersigned counsel to "be an adult," that counsel does not "rule the roost," and threatening to leave the deposition room if counsel insisted he answer a question (and an important one, in Defendants' view). *Id.* at 182:2–17 ("***We're done with this case*** [*Schwartz*]. ***You get it?***") (emphasis added). Eventually, undersigned counsel moved on, but it is noteworthy that the Bainbridges' own purported legal expert could not give a cogent and calm explanation why an on-point Third Circuit opinion is of no moment.

- The pooling and servicing agreement that governs the relationship between the loan servicer and the investor trust (*id.* at 64:5–14);

- The Bainbridges' Chapter 13 plan approved by the bankruptcy court (*id.* at 80:23–81:3);

- The bankruptcy court order granting U.S. Bank and Ocwen relief from stay and allowing them to pursue the Foreclosure Action (*id.* at 129:14–16);[3]

- Any other documents from the bankruptcy court other than the filing that forms the basis of the Bainbridges' FDCPA claim against Ocwen and the document that preceded it (*id.* at 82:4–11);

- Any documents from Ocwen (it produced over 4,400 pages of loan documents, correspondence, accounting, and internal records) (*id.* at 153:24–154:2);

- Any loan transaction history for the Bainbridges' mortgage loan (*id.* at 86:21–23);

---

[3]     Mr. Pearlstein was content to speculate at his deposition about the order granting relief from stay that he never read; he guessed that it was "a standard 363A that says you're granted the relief from the stay." *Id.* at 129:18–20. In fact, the order was specific, and stated that Ocwen on behalf of U.S. Bank could "proceed with its mortgage foreclosure action and Sheriff's Sale (and all other rights under state and federal law) concerning the Property (the "Property"): *25 5th Street, Hawley, PA*." August 6, 2013 Order, attached hereto as **Exhibit F** (emphasis supplied).

- Any suspense account transaction history for the Bainbridges' mortgage loan (*id*. at 158:15–17);

- The comments logs from Ocwen or Litton (produced by Defendants in this case) reflecting all payments and transactions on the loan, as well as all communications with the Bainbridges about the loan (*id.* at 131:17–22);

- The trial transcript from the Foreclosure Action (*id.* at 148:22–24);

- Any of the exhibits the Bainbridges presented at trial in the Foreclosure Action, evidencing their post-bankruptcy petition payment history (*id.* at 88:21–88:6, 149:1–10);

- Any of the summaries of the transaction histories that were prepared by the Bainbridges' lawyers or Defendants' corporate witness (id. at 107:6–14).[4]

Mr. Pearlstein agreed that it would have been "helpful" to review documents from Ocwen and U.S. Bank before opining that they had acted for an improper purpose in filing the Foreclosure Action. *Id.* at 154:12–155:1. He also agreed it would have been "helpful" to review the loan transaction history when he was opining on whether the Foreclosure Action was properly brought. *Id.* at 87:2–17. In addition,

---

[4]     Because it was not among the documents Mr. Pearlstein said he reviewed, it also appears that he did not review the Adjustable Rate Note that governs what constitutes a default. Pearlstein Dep., **Ex. B**, at 69:24–70:14.

he testified that "[i]t would have been nice" to have seen the documents that the Bainbridges claim prove that the Foreclosure Action was brought without probable cause, but that he did not need to review them to form his opinions. *Id.* at 88:7–14. Even though he had never looked at a loan transaction history or any of the payment documents, Mr. Pearlstein felt comfortable testifying about what the suspense account balance was on the Bainbridges' mortgage loan at various points in time. *See, e.g.*, *id.* at 94:15–95:4.

Mr. Pearlstein was also unaware of other important facts. He could not testify if the Bainbridges had missed one of their post-petition bankruptcy payments. *Id.* at 106:18–107:1 ("I don't know whether the payment was missed, when the payment was missed, or even if a payment was missed."). He also did not know what loan servicing platform Litton used or what loan servicing platform Ocwen used at the relevant times. *Id.* at 85:17–24. Mr. Pearlstein was also unsure if the Udren firm was even a defendant in the case, and had to consult Plaintiffs' counsel and the case caption on his expert report to answer a question about that. *Id.* at 75:15–77:5. In fact, Mr. Pearlstein's report erroneously identified the discovery responses from U.S. Bank and Ocwen as having come from Udren. *Id.* at 111:3–11.

III.   **LEGAL STANDARD**

Under Rule 702, "[t]he Court acts as a gatekeeper and must screen purport-edly scientific evidence to ensure that any and all such proffered evidence is both relevant and reliable." *Rowland v. Novartis Pharms. Corp.*, 9 F. Supp. 3d 553, 558 (W.D. Pa. 2014) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). "In determining the admissibility of expert testimony, courts have catego-rized the Rule 702 requirements as (1) the expert's qualifications, (2) the reliability of the expert's methods, and (3) the 'fit' of the expert's methods to the facts of the case (*i.e.*, whether the expert's methods are helpful to the fact finder)." *Id.* at 558–59. As "the party offering an expert's testimony," the Bainbridges "must establish its admissibility by a preponderance of the evidence." *Wonderland Nurserygoods Co. v. Thorley Indus. LLC*, No. 13-00387, 2015 U.S. Dist. LEXIS 110935, at *10 (W.D. Pa. Aug. 21, 2015), attached hereto as **Exhibit G**.

IV.   **ARGUMENT**

   A.   **Mr. Pearlstein Is Not Qualified to Offer Expert Opinions in a Dragonetti Act Case Involving a Loan Servicer.**

"Qualification refers to the requirement that the witness possess specialized expertise" in the area in which he proposes to testify. *Rowland*, 9 F. Supp. 3d at 559 (citation and quotation marks omitted); *see Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 568 (W.D. Pa. 2003) ("Before being permitted to give opin-ion testimony on a particular subject, a witness must be 'qualified' as an expert *on*

*that subject.*") (emphasis added). Thus, "[a]n expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003). "While the background, education, and training may provide an expert with general knowledge to testify about general matters, more specific knowledge is required to support more specific opinions." *Id.*

Mr. Pearlstein is not qualified to give an expert opinion in this case. He has very little professional experience with the Dragonetti Act. *See supra* § II(A). Almost none of his work as a litigation attorney has involved the Dragonetti Act: he has been involved in only two cases involving the Act, one as a party defendant representing himself and another as an attorney prosecuting a Dragonetti Act case (a case which he lost for reasons he could not recall). He has only testified in one Dragonetti Act case as expert witness (he surmises), and could not recall the details of that testimony. His lack of experience and knowledge in this area shows: he had to withdraw one half of his two-part legal opinion because his theory had been flatly rejected by the Pennsylvania Supreme Court in 2006. In addition, he was unaware of an important Third Circuit decision that bears on this case.

In addition, Mr. Pearlstein does not have sufficient knowledge of the mortgage banking or loan servicing industry to give testimony in this case. He admitted he has never worked in that industry. He also admitted that he does not know what

kind of loan servicing platforms either of the relevant loan servicers (Litton and Ocwen) used. In addition, he has had no experience with any loan servicing platform. It also became clear during his deposition that he was unfamiliar with basic documents (like comments logs) that financial services companies use to track loans. He also made no effort to familiarize himself with those documents, as he never read them (Defendants produced them, for the record).

In sum, Mr. Pearlstein lacks the professional experience and knowledge to offer competent opinion testimony in this case.

## B.     Mr. Pearlstein's Opinions Are Not Reliable.

Whether or not Mr. Pearlstein can be qualified as an expert, his opinions in this case are unreliable. Reliability means "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Calhoun*, 350 F.3d at 321 (quoting *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)). Mr. Pearlstein's analysis is unreliable because he did not review the key documents. Section II(B) *supra* provides a litany of documents and materials Mr. Pearlstein failed to review. Most glaringly, he did not read any of the financial documents, including transaction histories (or even summaries of them) and payment documents (like the Bainbridges' bank records).

Yet the Bainbridges ask that the Court permit him to sit upon the witness stand and tell the fact finder—with the imprimatur of "expert"—about what happened with the Bainbridges' mortgage loan and whether or not it was in default. The law does not allow that. "If *Daubert* and its progeny require anything, it is that plaintiffs come forward with proof of a valid methodology based on more than just the *ipse dixit* of the expert." *Pappas v. Sony Elecs., Inc.*, 136 F. Supp. 2d 413, 426 (W.D. Pa. 2000); *see also GE v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Here, that gap is insurmountable. Because Mr. Pearlstein failed to review the documents setting forth the basic facts in this case, his conclusions are not even loosely tied to the facts. *See, e.g., Scrofani v. Stihl, Inc.*, 44 Fed. App'x 559, 562 (3d Cir. 2002) (affirming exclusion of expert testimony in product liability failure to warn case because proffered expert had failed to review the warning on the product in question before opining that it was inadequate). The absence of objective support leaves only Mr. Pearlstein's speculation and conjecture, which cannot survive scrutiny under *Daubert*.

### C.    Mr. Pearlstein's Opinions Would Not Assist the Court.

In their gatekeeping function, federal district courts must determine whether expert testimony will help the trier of fact. *United States v. Agnes*, 753 F.2d 293, 303 (3d Cir. 1985), *abrogated on other grounds by Smith v. Borough of Wilkinsburg*, 147 F.3d 272 (3d Cir. 1998). But an expert cannot testify as to the governing law of the case. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006). "[A]n expert witness is prohibited from rendering a legal opinion." *Id.* (citing *United States v. Leo*, 941 F.2d 181, 195–96 (3d Cir. 1991). "Such testimony is prohibited because it would usurp the District Court's pivotal role in explaining the law to the jury." *Berckeley*, 455 F.3d at 217 (citing *First National State Bank v. Reliance Elec. Co.*, 668 F.2d 725, 731 (3d Cir. 1981) (per curiam)).

Expert testimony that is "essentially a legal brief […] runs afoul of the Court of Appeal's prohibition on legal opinion in the guise of expert testimony." *Nye v. Ingersoll Rand Co.*, No. 08-3481, 2011 WL 5513190, at *6 (D.N.J. Nov. 9, 2011), attached hereto as **Exhibit H**. An expert may not draw legal conclusions by applying law to facts. *See VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 428 n. 4 (W.D. Pa. 1998) ("[A]n expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."); *see also Langbord v. U.S. Dep't of Treasury*, No. 06-5315, 2009 WL 1312576, at *8 (E.D. Pa. May 7, 2009) (finding that it would be inappropriate for

expert to "apply the resulting law to the facts of [a] case to draw a legal conclusion"), attached hereto as **Exhibit I**.

Yet, this is what Mr. Pearlstein did consistently in both his report and his deposition testimony. From his report:

> In applying the foregoing [facts] to the instant action, ***it is clear to me that the Bainbridge's*** [sic] ***can demonstrate the presence of all of the elements necessary to sustain their Dragonetti action against U.S. Bank and Ocwen as to part I of my analysis and U.S. Bank, Ocwen and the Udren Law Firm as to part II***.

Expert Report of Mark Pearlstein, **Ex. D**, at 12. Mr. Pearlstein is not even trying to hide that he is doing exactly what Third Circuit law forbids: he intends to tell the fact finder that the Bainbridges have fulfilled the elements of their claim. His report is even structured as a legal brief in the traditional format, first the facts, then the law, then the application of law to facts. *Id.* at 1–7 (his presentation of facts), 8–12 (his citation of law), and 12–24 (his analysis of the merits of the case). His analysis walks through each element of the claim, and assesses whether the facts meet the law, citing code sections and considering whether the facts are sufficient to satisfy the prong. *See, e.g.*, *id.* at 18–19. His report contains too many examples to list here, but the concluding sentence in his report sums it up well: "Thus, U.S. Bank, at [sic] al. acted in violation of the Dragonetti Act." *Id.* at 24.

His deposition testimony only served to confirm that Mr. Pearlstein intends to explain to the fact finder how to apply facts to law.

```
3        Q       Do you think it was your job as an expert
4        witness in this case to apply facts to law?
5        A       Yes, absolutely.
```

Pearlstein Dep., **Ex. B**, at 136:3–5. His core opinions about whether the Foreclo-

sure Action was filed with probable cause relies entirely on an interpretation of

Pennsylvania statute and Supreme Court precedent. *Id.* at 151:3–8 ("Given the in-

terplay of 1147A and Pautenis and Meco [Pennsylvania state cases], the require-

ment for accuracy in the Act 91 […], if you're required to be, quote, exact or,

quote, precise, you need to be."); *see also id.* at 127:15–21 (explaining Pennsylva-

nia case law). The same is true of his opinion with respect to Defendants' supposed

improper purpose in filing the Foreclosure Action.

```
9        Q       Okay.  So where do you get this notion that
10       an improper purpose may be inferred, because you're
11       saying it's permissible to infer, right?  That's
12       what you're saying in that sentence, right?
13       A       They had to come from case law.
```

*Id.* at 162:9–13. In sum, Mr. Pearlstein seeks to invade the province of the Court

and the fact finder, and his opinion testimony must be excluded under clear Third

Circuit precedent.

## V.   <u>**CONCLUSION**</u>

The Court should grant U.S. Bank and Ocwen's motion and exclude Mr. Pearlstein from offering any opinion testimony in this case.

Respectfully submitted,

Dated: August 9, 2019          **GREENBERG TRAURIG, LLP**

s/ Gregory T. Sturges
Brian T. Feeney (Pa. I.D. No. 78574)
Gregory T. Sturges (Pa. I.D. No. 200992)
1717 Arch St., Suite 400
Philadelphia, PA 19103
(t) 215.988.7820  (f) 215.717.5238
feeneyb@gtlaw.com
sturgesg@gtlaw.com

*Attorneys for Defendants U.S. Bank
and Ocwen*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| CHRISTOPHER BAINBRIDGE & | : | |
| KELLY BAINBRIDGE, INDIVID. & | : | |
| AS H/W, | : | |
| | : | |
| Plaintiffs, | : | No. 3:16-cv-00411-MEM |
| | : | (Hon. Malachy E. Mannion) |
| v. | : | |
| | : | |
| U.S. BANK, N.A. as Trustee for the | : | |
| C-BASS Mortgage Loan Trust Asset- | : | |
| Backed Certificates, Series 2007- | : | |
| CB6, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.8(b), I, Gregory T. Sturges, certify that the Memorandum in Support of the Motion to Exclude the Opinion Testimony of Mark Pearlstein contains 4,239 words, as counted by the word count feature of Microsoft Word, which was used to prepare the brief.


s/ Gregory T. Sturges
Gregory T. Sturges (Pa. I.D. No. 200992)

*Attorneys for Defendants U.S. Bank
and Ocwen*

1