# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER BAINBRIDGE & KELLY BAINBRIDGE,** Individually and as His Wife, : : : | |
| Plaintiffs : | CIVIL ACTION NO. 3:16-411 |
| v. : | (JUDGE MANNION) |
| **U.S. BANK, N.A. as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6, et al.,** : : : | |
| Defendants : | |

## **MEMORANDUM**

Pending before the court is a motion for summary judgment filed by defendants U.S. Bank, N.A., as Trustee for the C-BASS Mortgage Loan Trust Asset-Backed Certificates, Series 2007-CB6 ("U.S. Bank") and Ocwen Loan Servicing, LLC ("Ocwen") (Doc. 95), as well as a motion for partial summary judgment by the plaintiffs (Doc. 98). Based upon the court's review of the motions and related materials, the defendants' motion will be **GRANTED** and the plaintiffs' motion will be **DENIED**.

**I.     LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*,477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-LaRoche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. *Applemans v. City of*

*Phila.*,826 F.2d 214, 216 (3d Cir. 1987). When confronted with cross-motions for summary judgment, as in this case, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard." *Marciniak v. Prudential Financial Ins. Co. of America*, 2006 WL 1697010, at *3 (3d Cir. June 21, 2006) (citations omitted) (not precedential). If review of cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted). *See Nationwide Mut. Ins. Co. v. Roth*, 2006 WL 3069721, at *3 (M.D. Pa. Oct. 26, 2006) aff'd, 252 Fed. App'x. 505 (3d Cir. 2007).

**II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In support of their motion for summary judgment, the defendants have provided a statement of material facts, the following of which are not in dispute. After his grandmother died, the plaintiff, Christopher Bainbridge, inherited a 16% share in his grandparents' former vacation and fishing property located at 25 5th Street, Hawley, Pennsylvania. Mr. Bainbridge bought his cousins' share of the property, so that he would own the entire

- 4 -

property himself. At the time, the property was valued at $60,000. Although there was a structure on the property when he inherited it, Mr. Bainbridge described the structure as "a shack."

In 2005, Mr. Bainbridge built a new house on the property, financed with his own savings, spending approximately $145,000 or $150,000 to build the new structure. Subsequently, on March 28, 2007, Mr. Bainbridge and his wife, Kelly Bainbridge, signed a mortgage with Imperial Lending, LLC, in the amount of $120,000 for the property, which Mr. Bainbridge testified he took to pay off debt and rebuild his personal finances that were depleted by the construction of the new home on the property. The mortgagee listed on the mortgage was Mortgage Electronic Registration Systems, Inc. ("MERS"). On the same day, the Bainbridges also signed an adjustable rate note promising that they would repay the $120,000 with interest over a 30-year term. Paragraph 7(B) of the note provides "If I do not pay the full amount of each monthly payment on the date it is due, I shall be in default." On August 10, 2010, MERS assigned the mortgage to U.S. Bank.

Although Imperial Lending had originated the loan, records from Litton Loan Servicing demonstrate that it was the first loan servicer on the mortgage. Litton sent the Bainbridges an introductory letter on May 2, 2007, and the Bainbridges began paying shortly thereafter. As of July 31, 2007, the

Bainbridges were current on their payments on the mortgage. In fact, there is no dispute that the loan was current and not in default when Litton first began servicing the mortgage in 2007.

In April 2010, however, the Bainbridges stopped making their monthly payments to Litton on the mortgage. Mr. Bainbridge testified that, although he and his wife could cover their mortgage payments, upon advice of counsel, they withheld payments because Mr. Bainbridge had a dispute with Litton regarding the proper amount of escrow on the mortgage. The Bainbridges held their mortgage payments for eight or nine months before they filed for Chapter 13 bankruptcy in November 2010.

On November 17, 2010, Litton filed a proof of claim on behalf of U.S. Bank. The proof of claim listed a total arrearage in the amount of $14,607.81, primarily owing from the Bainbridges' having withheld eight months of $1,602.25 payments. The proof of claim also listed the current monthly payment on the mortgage as $1,407.08. The Bainbridges' original proposed bankruptcy plan conflicted with the proof of claim stating that they only owed $12,600 in arrearages and a $1,160.00 monthly payment going forward. On December 7, 2010, U.S. Bank objected to the Bainbridges' original proposed plan, noting that the amounts relating to the mortgage on that document were incorrect.

On April 15, 2011, the Bainbridges submitted a first amended plan, which lists the amounts owed to U.S. Bank on the mortgage consistent with the proof of claim. On June 23, 2011, Judge Robert N. Opel, II, confirmed the Bainbridges' first amended plan. Section 2(B) of the confirmed amended plan states that the Bainbridges owed $1,407.08 directly to Litton each month after they filed for bankruptcy. Section 2(C) of the confirmed amended plan states that the Bainbridges missed a total of $14,607.81 in payments to Litton prior to filing for bankruptcy.

In the first two months after the Bainbridges filed for bankruptcy, they did not make their full monthly payment of $1,407.08 that they owed to Litton. Mr. Bainbridge testified that a payment summary was prepared by one of his attorneys, although he was unsure which attorney. Mrs. Bainbridge testified that the summary was created by one of their attorneys, Douglas Lally, who is not counsel of record in this action.[1] Mrs. Bainbridge agreed that by December 2010, she would have known that the monthly mortgage payment was actually $1,407.08 a month. Despite this, the Lally Payment Summary reflects, consistent with other documentation of record, that the Bainbridges made short payments of $1,400 in December 2010 and $1,160 in January

---

[1] This payment summary is hereinafter referred to as the "Lally Payment Summary."

2011. When asked why she made short payments in those months, Mrs. Bainbridge testified that her husband told her to do it. Under Paragraph 7(B) of the Note, the Bainbridges' failure to pay the December 2010 and January 2011 payments in full and on time constituted a default.[2]

Although the Lally Payment Summary was accurate with respect to the shorted payments in December 2010 and January 2011, it included certain inaccuracies. For example, it showed a payment being made on November 28, 2011 in the amount of $1,407.08. However, as the Lally Payment Summary itself states, there were no supporting records available to demonstrate that the November 28, 2011, payment had been issued and cashed by the mortgagee or its loan servicer. Moreover, another payment summary prepared by the Bainbridges' attorney, Robert P. Cocco, does not include the November 28, 2011, payment. Mrs. Bainbridge agreed that the Cocco Payment Summary reflected that the Bainbridges missed their December 2011 payment on the mortgage. The Bainbridges' failure to make

---

[2] Plaintiffs deny this statement arguing that any arrears would be insufficient to constitute a default under Pennsylvania's Act 91 statute. As such, plaintiffs argue that the statement is irrelevant. The statement is, however, supported by the record.

any payment in December 2011 constitutes another default under Paragraph 7(B) of the Note.[3]

Kevin Flannigan, a Senior Loan Analyst at Ocwen testified as the Rule 30(b)(6) witness for U.S. Bank and Ocwen in this case. During his deposition, Mr. Flannigan produced a payment summary document which confirmed Mrs. Bainbridge's testimony and the Cocco Payment Summary. In his testimony, Mr. Flannigan agreed that the Bainbridges missed their December 2011 payment. Mr. Flannigan testified that, in 2013, the Bainbridges were consistently one month behind in payments, a trend which continued until Ocwen began returning the Bainbridges' payments in early 2014. During the 37-month period from November 2010 until December 2013, the last month Ocwen accepted payments from the Bainbridges, Mr. Flannigan testified they made only 36 payments. The fact that the Bainbridges were consistently one month behind in their payments beginning in 2013 is another event of default under Paragraph 7(B) of the Note.[4]

---

[3] Plaintiffs deny paragraphs 34-40 of the defendants' statement of material facts arguing that they inaccurately summarize the testimony of their expert, Mark S. Pearlstein. However, only paragraph 34 summarizes Mr. Pearlstein's testimony. Paragraph 34 has been omitted because the court has excluded Mr. Pearlstein's testimony. Otherwise, the remaining paragraphs 35-40 do not summarize Mr. Pearlstein's testimony and are supported by independent evidence in the record, which plaintiffs do not refute. As such, these paragraphs are deemed admitted.

[4] See n.2.

- 9 -

In June 2011, Ocwen assumed all mortgage servicing rights to the Bainbridges' loan by virtue of Ocwen Financial Corporation's acquisition of all the outstanding partnership interests of Litton, including a servicing portfolio that included such rights. On October 12, 2011, Ocwen filed a transfer of claim for security from Litton to Ocwen.

On July 18, 2013, U.S. Bank, through Ocwen, filed a motion for relief from automatic stay in the bankruptcy court seeking permission to file a foreclosure action against the Bainbridges in the state court. The Bainbridges did not respond to the motion for relief and, based on this failure to respond as directed by the bankruptcy court, on August 6, 2013, the motion for relief was granted permitting U.S. Bank and Ocwen to file a foreclosure action against the Bainbridges in Pennsylvania state court.[5]

On June 26, 2014, U.S. Bank filed a complaint in mortgage foreclosure against the Bainbridges in the Court of Common Pleas for Wayne County, Pennsylvania. Mark Udren, the named partner in the now defunct law firm that prosecuted the foreclosure action on behalf of U.S. Bank and Ocwen,

---

[5] As noted by plaintiffs, in his opinion addressing a previously filed motion to dismiss, Judge Nealon found that, even if the bankruptcy court order had preclusive effect on the Dragonetti claim in this action, the order did not provide enough for this court to say, as a matter of law, that it established "probable cause" to bring the underlying mortgage foreclosure action, much less to continue that action (Doc. 36, pp. 41-42).

testified that the purpose of the foreclosure action was to foreclose on the property. He further testified that he believed a borrower would have to be in default for 60 days before they would receive an Act 91 notice and that he did not know whether he had reviewed any documents indicating that the Bainbridges were 60 days in arrears prior to filing the foreclosure action.

Mr. Flannigan also testified that the foreclosure action was filed to foreclose on the property and for no other reason. He further testified, however, that he did not know what the Bainbridges owed prior to the filing of the foreclosure action against them.

In March 2015, the foreclosure action was tried before President Judge Raymond Hamill of the Court of Common Pleas of Wayne County, Pennsylvania. On March 13, 2015, Judge Hamill entered a verdict in favor of the Bainbridges. In a footnote, Judge Hamill explained that the evidence submitted at trial showed that "Ocwen believed it had taken over servicing of a delinquent mortgage." Nonetheless, Judge Hamill found that the Litton servicing records within Ocwen's files were inadmissible. In addition, the court noted "serious concerns as to whether all payments made to Litton on this loan were accounted for correctly." Overall, defendant U.S. Bank was found not to have sustained its burden of proof at trial and the court ruled in the Bainbridges' favor. U.S. Bank did not appeal Judge Hamill's verdict.

The sole remaining basis for the Bainbridges' claim under the FDCPA against Ocwen is that it filed a response to the trustee's final notice of cure under Bankruptcy Rule 3002.1(g) in October 2015, which allegedly misstated the Bainbridges' debt.[6/7] There is no indication from the record that any of the Bainbridge's potential creditors saw the response to notice of cure.[8] In response to defendants' discovery requests seeking information as to how their credit had been harmed, the Bainbridges answered that "the public record of the foreclosure and derogatory reporting of the Ocwen loan obligation" hurt their credit. Mr. Bainbridge also testified repeatedly that it was the foreclosure action and the credit reporting on it, and not anything else, that caused harm to his credit. Mrs. Bainbridge testified similarly. In fact, Mrs. Bainbridge testified that no potential creditor ever referenced the response to notice of cure as a reason to decline the Bainbridges' credit.

---

[6] Plaintiffs deny this statement indicating that the FDCPA claim had been dismissed in its entirety. To the contrary, however, the FDCPA claim with regard to the bankruptcy was allowed to proceed. (Doc. 36).

[7] In response to this fact, the plaintiffs argue it was the defendants' inaccurate accounting of their loan, which resulted in the unlawful foreclosure filed in June 2014 by U.S. Bank, that caused harm to their credit and their emotional well-being, and that the notice of final cure is some evidence of the inaccurate accounting.

[8] Although plaintiffs argue there is a public record of the foreclosure action, the basis of their claim is the response to notice of cure.

As to the emotional distress damages sought in relation to the FDCPA claim, Mr. Bainbridge testified that his emotional distress claim was that the foreclosure action had caused marital problems between him and his wife. Specifically, Mr. Bainbridge testified that in late 2013 and early 2014, he believed his "wife took every [mortgage] payment and she went crazy, shopping and never paid our mortgage and hid it from me." During this period, because of the confusion over whether the mortgage had been paid, Mr. Bainbridge testified that it was not a happy time. The response to the notice of cure was not filed for over a year after Mr. Bainbridge testified his marital problems occurred. Mrs. Bainbridge gave similar testimony, stating that Mr. Bainbridge "blamed" her and "said [she] was spending his money." The record demonstrates then that the foreclosure action and the events that led up to it caused the Bainbridge's claimed emotional distress, not the response to the notice of cure.

Based upon the above facts, defendants U.S. Bank and Ocwen argue that the court should grant summary judgment on the plaintiff's FDCPA claim because Ocwen is not a "debt collector" under the Act, having become plaintiffs' loan servicer through an acquisition of another company (Litton) rather than a transfer of this particular loan account. Moreover, these defendants argue that they are entitled to summary judgment on the

plaintiffs' economic and emotional distress damages claim under the FDCPA because the record demonstrates that the October 2015 bankruptcy filing, the sole remaining basis for the FDCPA claim, did not cause them any harm.

The plaintiffs provide no opposition to the summary judgment argument on the FDCPA claim. Instead, the plaintiffs provide that that the FDCPA claim is a "moot issue" because the Honorable William J. Nealon, Jr.,[9] dismissed Count I of their complaint for violation of the FDCPA.

Despite the plaintiff's characterization of the FDCPA claim as moot, upon review, Judge Nealon ordered:

> 3. Defendants' respective motions to dismiss (Docs. 21, 23), are **GRANTED** to the extent they seek dismissal of Plaintiffs' Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), claims concerning Plaintiffs' underlying state foreclosure action, see (Doc. 14, pp. 5-6). **Plaintiffs' remaining FDCPA claims concerning their bankruptcy action, see (Doc. 14, p. 5), will proceed.**

(Doc. 37) (emphasis added).

In any event, considering the FDCPA claim concerning the bankruptcy action, the court agrees that there is nothing in the record to establish that the plaintiffs sustained any damages, economic or otherwise, as they must

---

[9] The instant action had originally been assigned to Judge Nealon. However, by order dated March 22, 2018, the action was reassigned.

in order to go forward with their claim. See 15 U.S.C. §1692(a)(1). As such, the moving defendants will be granted summary judgment as to this claim.

Defendants U.S. Bank and Ocwen further argue that the court should grant summary judgment on the plaintiffs' Dragonetti Act claim because the record demonstrates that defendants filed the foreclosure action to adjudicate foreclosure and not for any other purpose.

> The Dragonetti Act codifies the common law tort of wrongful use of civil proceedings in Pennsylvania. 42 Pa. Con. Stat. §§ 8351–8354. Dragonetti Act claims may be brought against parties and the attorneys that represent them. Id. To prevail on a Dragonetti Act claim, a plaintiff must prove that "a person who [took] part in the procurement, initiation or continuation of civil proceedings against another . . .: (1) [acted] in a grossly negligent manner or without probable cause and primarily for [an improper] purpose . . .; and (2) the proceedings . . . terminated in favor of the person against whom they [were] brought." Id.
>
> \* \* \*
>
> "[A] party seeking redress under [the] Dragonetti [Act] bears a heavy burden," U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 394 (3d Cir. 2002), because the plaintiff need not only demonstrate either probable cause or gross negligence, but must also prove the underlying action was filed for an improper purpose. See Broadwater v. Sentner, 725 A.2d 779, 784 (Pa.Super.Ct. 1999).
>
> The court decides the existence of probable cause, gross negligence, or improper purpose as a matter of law when the facts are not in dispute. See Wainauskis v. Howard Johnson Co., 339 Pa.Super. 266, 488 A.2d 1117, 1122 (1985); Meiksin v. Howard Hanna Co., Inc., 404 Pa.Super. 417, 590 A.2d 1303, 1305 (1991); Bannar v. Miller, 701 A.2d 242, 248 (Pa.Super.Ct.

>1997). If there is a factual dispute as to probable cause, gross negligence, or improper purpose, then the matter is for the fact-finder to determine. Bannar, 701 A.2d at 249.

Schmidt v. Currie, 217 F. App'x 153, 155–56 (3d Cir. 2007) (footnote omitted).

In order to establish an improper purpose, the plaintiffs must demonstrate that "the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based." 42 Pa.C.S.A. §8354(4). Bobrick Corp. v. Santana Prod., Inc., 698 F.Supp.2d 479, 491 (M.D.Pa. 2010). Here, regardless of whether they succeeded in the foreclosure action or not, the only evidence of record is that the defendants brought the foreclosure action for the primary purpose of foreclosing on the Bainbridges' property and to recoup monies owed on their loan. This constitutes an adjudication of the claim on which the proceedings were based. The plaintiffs have produced no evidence that the foreclosure action was filed for any other purpose than to foreclose on the property. Because the plaintiffs have not demonstrated an improper purpose in bringing the proceedings, they cannot succeed on their Dragonetti claim and the moving defendants are to summary judgment on this claim as well.

### III. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In their motion, the plaintiffs seek partial summary judgment on liability against defendants U.S. Bank and Ocwen on the Dragonetti claim. In so doing, the plaintiffs argue that the defendants were grossly negligent in filing the foreclosure action against them, they did not have probable cause to file the foreclosure action and they acted with an improper purpose in bringing and continuing the foreclosure action.

As discussed above, based upon undisputed facts presented by the defendants, the court has found that the plaintiffs have failed to establish that the defendants had an improper purpose for bringing the foreclosure action. Specifically, the record demonstrates that the foreclosure action was brought to foreclose on the property for monies which the defendants believed were due.

While the plaintiffs argue that the defendants acted with an improper purpose in bringing and continuing the foreclosure action, the statement of material facts presented by the plaintiffs in support of their motion for partial summary judgment does not contain any facts establishing the improper purpose. The plaintiffs argue in their brief that the improper purpose was to collect monies that were not owed to defendants. The plaintiffs argue that

the defendants' foreclosure complaint alleged that they were in default by failing to make their September 1, 2013 payment and all subsequent payments, and that the January 2, 2014 Act 91 Notice sent on behalf of U.S. Bank claimed that they owed $7,299.20 from September 1, 2013 through January 1, 2014. The plaintiffs argue that this amount is not supported by the record.

     Whether or not the actual amount which defendants believed they were owed was correct, the record demonstrates that the defendants inherited a loan which they believed to be in default and they filed an action for the sole purpose to foreclose on that loan. The purpose of foreclosure is, of course, to recover a debt owed which the property secures. The court finds that the plaintiffs have not met the stringent burden which they must in order to demonstrate that the defendants brought the foreclosure action for an improper purpose. As such, the plaintiffs' motion for partial summary judgment will be denied.

## IV. CONCLUSION

In light of the foregoing, the defendants' motion for summary judgment **(Doc. 95)** will be **GRANTED** and the plaintiff's motion for partial summary judgment **(Doc. 98)** will be **DENIED**. An appropriate order shall issue.

*S? Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: March 12, 2021**
16-411-02